# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| National Treasury Employees Union | Linda M. Springer, Director<br>U.S. Office of Personnel Management |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF     11001<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Gregory O'Duden, Elaine Kaplan, Larry Adkins and Timothy Hannapel<br>National Treasury Employees Union<br>1750 H Street, N.W.<br>Washington, D.C. 20006<br>(202) 572-5500 | |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

◉ 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*

☐ 410 Antitrust

○ **B.** *Personal Injury/ Malpractice*

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

◉ **C.** *Administrative Agency Review*

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*      OR      ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G.** *Habeas Corpus/ 2255* | ○ **H.** *Employment Discrimination* | ○ **I.** *FOIA/PRIVACY ACT* | ○ **J.** *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K.** *Labor/ERISA (non-employment)* | ○ **L.** *Other Civil Rights (non-employment)* | **M.** *Contract* | ○ **N.** *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Administrative Procedure Act (5 USC 706) challenge to OPM's regulation establishing the Federal Career Intern Program (5 CFR 213.3202(o)

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ **JURY DEMAND:** | Check YES only if demanded in complaint<br>YES ☐     NO ☒ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY** (See instruction)     YES ☐     NO ☒     If yes, please complete related case form.

DATE _1/24/07_     SIGNATURE OF ATTORNEY OF RECORD     *Timothy B. Hannapel*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

    **I.**     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

    **III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

    **IV.**   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

    **VI.**   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

    **VIII.**  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY EMPLOYEES UNION    )
1750 H Street, NW                    )
Washington, DC 20006                 )
(202) 572-5500                       )
                                     )
          Plaintiff,                 )
                                     )
          v.                         )
                                     )   CIVIL ACTION NO. _____
LINDA M. SPRINGER, Director          )
U.S. Office of Personnel             )
 Management                          )
1900 E Street, N.W.                  )
Washington, D.C.  20415              )
(202) 686-1800                       )
                                     )
          Defendant.                 )
_____)

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

This action challenges the legality of regulations issued
by the U.S. Office of Personnel Management (OPM) which authorize
federal agencies to hire applicants for federal civil service
positions under the "Federal Career Intern Program" (FCIP).
That program provides agencies with broad discretion to depart
from the carefully designed competitive examination and
selection requirements that have been the cornerstone of the
merit-based federal civil service system since its inception.
It does so notwithstanding that competitive procedures were
intended to be "the norm rather than the exception" (National

Treasury Employees Union v. Horner, 854 F.2d 490, 495 (D.C. Cir.
1988)) and notwithstanding that civil service law permits
departures from the use of competitive procedures only where
"necessary" for "conditions of good administration" (5 U.S.C.
§3302).

The FCIP was originally proposed and implemented on an
interim basis in 2000, and became a permanent hiring authority
as a result of final regulations issued in 2005.  Both as
proposed and finalized, the FCIP program gives the appearance of
being a limited, special focus hiring program.  It was
purportedly intended to provide formally-structured 2-year
training and development "internships" as a strategic tool to
target recruitment of "exceptional men and women" for the
Federal workforce.  Over time, however, the FCIP program has
become the hiring method of choice for many federal jobs,
including positions at such NTEU-represented agencies as the
Internal Revenue Service (IRS), the Department of Homeland
Security's Bureau of Customs and Border Protection (CBP), and
the Federal Deposit Insurance Corporation (FDIC).  Its use has
increased so dramatically that FCIP hiring threatens to supplant
the competitive examination process as the primary means of
entry into the competitive service.

The FCIP program undermines the public interest in the
merit based civil service, contrary to statutory merit systems

principles.  Those principles require, among other things, that
"selection and advancement" in the civil service be determined
"on the basis of relative ability, knowledge and skills, after
fair and open competition which assures that all receive equal
opportunity."  5 U.S.C. § 2302(b)(1).

The program also directly injures NTEU-represented
employees in several respects.  First, when agencies fill jobs
using their FCIP hiring authority, NTEU represented-employees,
as well as all other applicants, are deprived of the opportunity
to be competitively examined under the fair and open process
prescribed by the statute and regulations governing appointments
to the competitive service.  Second, NTEU-represented employees
who have been hired under the FCIP authority are harmed because
they are subject to a de facto 2-year (or in some cases, 3-year)
probationary period, instead of the 1-year period that generally
applies to entry-level positions in the competitive service.
Finally, IRS employees represented by NTEU suffer an additional
injury, because use of FCIP hiring authority in place of
established competitive procedures divests internal applicants
of important rights and benefits provided by the NTEU-negotiated
collective bargaining agreement.

In this action, NTEU seeks a declaration that the final
FCIP regulations are arbitrary, capricious, and contrary to law
(specifically, 5 U.S.C. §§ 3302 and 3304).  It also seeks

injunctive relief invalidating OPM's FCIP regulations, and prohibiting federal agencies from continuing to use FCIP hiring authority to select employees for competitive service positions.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3.    Plaintiff National Treasury Employees Union ("NTEU" or the "Union") is an unincorporated association having its headquarters at 1750 H Street, NW, Washington, DC 20006. Pursuant to Title VII of the Civil Service Reform Act of 1978, Pub. L. 95-454, 92 Stat. 1111 (1978), NTEU is the exclusive bargaining representative of approximately 150,000 federal employees, including approximately 98,000 workers at the IRS, approximately 14,000 workers at CBP, and approximately 3,000 workers at the FDIC.  NTEU represents the interests of these employees by, inter alia, negotiating collective bargaining agreements; arbitrating grievances under such agreements; filing unfair labor practice charges; lobbying Congress for favorable working conditions, pay, and benefits; and litigating employees' collective and individual rights in federal courts.

4.    Defendant Linda M. Springer is the Director of the U.S. Office of Personnel Management.  The Director is responsible for executing, administering, and enforcing the civil service laws and regulations, including the requirements that individuals be employed by the federal government through open, competitive examinations, 5 U.S.C. §§ 1103(a)(5); 3304(b), and that "exceptions of positions from the competitive service" may be authorized only where "necessary," and "warrant[ed]" by "conditions of good administration."  Id. at § 3302(1).  The Director is sued solely in her official capacity.

## STATEMENT OF CLAIMS

### Legal Requirements for Federal Hiring

5.    The statute governing the employment of individuals by the federal government requires "competitive examinations for testing applicants for appointment to the competitive service." 5 U.S.C. § 3304(a).  The statute also requires that, after the examination process, applicants be rated and ranked, that certain additional credit be provided to veterans, and that the agency select one of the top candidates for the position.  5 U.S.C. §§ 3311, 3313, 3318, 3319.

6.    The President, through his delegatee, OPM, may make only "necessary" exceptions from the examination requirement of section 3304(a).  5 U.S.C. § 3302.  Employees who hold jobs that

have been excepted from the examination requirement are hired into the "excepted," rather than the "competitive" service.

7.    By regulation, there are three categories of "excepted" appointing authorities.  The three categories are referred to as "Schedule A", "Schedule B", and "Schedule C" authority.  See 5 C.F.R. Part 213, Subpart C.

8.    "Schedule A" hiring authority is used for positions other than those of a confidential or policy determining character where it is "impracticable to examine."  See 5 C.F.R. §213.3101.

9.    "Schedule B" hiring authority is used for positions other than those of a confidential or policy determining character where it is "not practicable to hold a competitive examination."  See 5 C.F.R. §213.3201.

10.   "Schedule C" hiring authority is used for "positions of a confidential or policy determining nature."  See 5 C.F.R. §213.3301.

### Creation of the FCIP Program

11.   OPM issued an interim rule to implement the FCIP on December 14, 2000.  See 65 Fed.Reg. 78,077 (Dec. 14, 2000).  The interim rule provided that the FCIP program would be implemented through a new "Schedule B" "excepted" appointment authority, applicable to the "entire executive civil service."

12.   Nearly five years after the issuance of the interim rule, OPM issued a final rule on August 2, 2005, in which it adopted most aspects of the interim rule, with minor changes. See 70 Fed. Reg. 44,219 (Aug. 2, 2005); 5 C.F.R. § 213.3202(o).

13.   Under the final regulations, agencies have unfettered discretion to use FCIP authority to fill vacancies in virtually any position, even those for which it is practicable to hold a competitive examination.  5 C.F.R. 213.3202(o)(10)(giving agencies the authority to "determine the appropriate use of the FCIP relating to recruitment needs in geographical areas, specific occupational series, and grades, pay bands or other pay levels . . .").

14.   Agencies have a strong incentive to hire under the FCIP because such hiring is exempt from application of many of the procedural requirements that apply to positions in the competitive service.  Under the FCIP, therefore, agencies are, among other things: 1) not required to announce vacancies to the public through OPM's USAJOBS website (compare 5 U.S.C. §3330); 2) not required to follow strict rules governing the rating and ranking of applicants' qualifications (compare 5 U.S.C. §§ 3304, 3308, 3313, 3317, 3318, 3319); 3) not required to provide additional points to applicants who are veterans (compare 5 U.S.C. §§ 3309, 3313).

15.    Although providing "interns" with a formally structured training and career development program is the core purpose underlying the FCIP authority, OPM's regulations set no minimum requirements for such training and development.  5 C.F.R. § 213.3202(o)(9).  As a result, many "interns" are given no more training or development than any other new hire working in the same job, and, in practice, "interns" frequently work side-by-side in the same jobs with non-FCIP new hires.

16.    FCIP authority also allows agencies to non-competitively convert FCIP employees, upon completion of the 2-year "internship" appointment, to career or career conditional status in the competitive service.  5 C.F.R. 213.3202(o)(6).  Thus, individuals who complete their two year "internship" are given positions in the "competitive service" without ever having competed for them.

### NTEU-Represented FCIP Hires Are Injured By the Longer Probationary Period that Applies to FCIP Hires

17.    When agencies use FCIP authority, the 1-year probationary period that must generally be served by employees hired for entry level jobs in the competitive service,  5 U.S.C. § 7511(a)(1)(A), is effectively doubled by the FCIP's 2-year "internship" appointment under Schedule B of the excepted service.  5 C.F.R. 213.3202(o)(1).

18.   In 2002, the U.S. Customs Service (now CBP) began using FCIP authority as its primary method for hiring entry-level Customs Inspectors (now Customs and Border Protection Officers).  CBP employees hired under the FCIP authority who are represented by NTEU are harmed by being subject to what is, in effect, a 2-year probationary period, instead of the 1-year period that generally applies to such positions when filled in the competitive service.  These employees must wait an extra year before they have the right to appeal any decision to terminate their employment to the MSPB or through the negotiated grievance-arbitration procedure.

19.   In 2006, the IRS began using FCIP authority to hire entry-level Revenue Officers and Revenue Agents.  For Revenue Agents, IRS received special authority from OPM to extend the "internship" period to three years.  IRS employees hired under the FCIP authority who are represented by NTEU are harmed by being subject to an effective 2-year probationary period (or a 3-year period for Revenue Agents), instead of the 1-year period that generally applies to such positions when filled in the competitive service.  These employees must wait an extra year (or two years for Revenue Agents) before they have the right to appeal any decision to terminate their employment to the MSPB or through the negotiated grievance-arbitration procedure.

20.  In 2005, the FDIC began using FCIP authority to hire entry-level Financial Institution Specialists, after receiving special authority from OPM to extend the "internship" period for such employees to three years.  FDIC employees hired as Financial Institution Specialists who are represented by NTEU are harmed by being subject to an effective 3-year probationary period, instead of the 1-year period that generally applies to such positions when filled in the competitive service.  These employees must wait an extra two years before they have the right to appeal any decision to terminate their employment to the MSPB or through the negotiated grievance-arbitration procedure

### NTEU-Represented Employees Who Apply For Positions Under the FCIP Program Are Injured Because They Are Denied Their Statutory Right To Compete for Jobs Pursuant to Statutorily Mandated Procedures

21.  Current NTEU-represented employees are permitted to apply for FCIP vacancies through the external application procedure on the same footing as members of the general public. The OPM regulations authorize agencies to fill jobs without complying with statutorily mandated competitive examination procedures described in ¶ 5 above.  NTEU-represented employees, like all other applicants, are injured because they are deprived of their statutory rights to compete for the vacancies on the

basis of their relative skills and abilities, in a fair and open process.

### NTEU-Represented Employees at IRS Who Seek Promotions Are Injured by Agencies' Use of the FCIP Hiring Program

22.  When an agency recruits internal candidates for competitive service positions, it must follow a merit promotion plan that conforms with guidelines established by OPM.  5 C.F.R. § 335.103.

23.  Merit promotion procedures include vacancy announcement requirements, ranking criteria, methods for identifying highly qualified candidates, and rules governing the identification of a specified number of "best qualified" candidates from which the selecting official may choose a candidate for promotion.

24.  At IRS, the regulatory merit promotion procedures have been incorporated within, and supplemented by, a collective bargaining agreement between that agency and NTEU, the exclusive representative of IRS employees.  See 2006 IRS/NTEU National Agreement, Article 13 (Attachment 1 hereto).

25.  Vacancies posted for internal candidates under agency merit promotion procedures have traditionally supplied significant opportunities for career advancement for lower graded employees of the IRS, especially those in clerical and technical jobs.  The IRS Revenue Agent and Revenue Officer

positions, in particular, are often sought by lower graded employees in order to advance their careers.

26. Prior to IRS' use of the FCIP authority to hire Revenue Agents and Revenue Officers, vacancy announcements for internal candidates were required by the collective bargaining agreement to be posted at sources widely accessible to agency employees, such as the agency intranet or other electronic medium. See 2006 IRS/NTEU National Agreement, Article 13, Section 3 (Att. 1 hereto).

27. Under the regulations creating the FCIP, agencies are not required to post FCIP vacancy announcements pursuant to internal merit promotion procedures. In practice, IRS has posted these vacancy announcements only for application by external candidates.

28. IRS employees cannot seek IRS positions filled under the FCIP pursuant to the internal merit promotion procedures contained in Article 13 of the 2006 IRS/NTEU National Agreement. These procedures provide internal candidates considerable benefits, including the requirement that internal applicants be given "first consideration" for vacancies. See NTEU/IRS Article 13, Section (1)B (Att. 1 hereto). Under that provision, while a management official may select applicants from rosters of both internal and external candidates, the official must give "first consideration" to the internal roster.

29. Further, in posting for external candidates under the FCIP, IRS is not required to use OPM's USAJOBS website. Instead, IRS has publicized these vacancies through resources less widely accessible to IRS employees nationwide, including by placing want-ads in local media and at college campus sites.

30. As a result, current IRS employees are hampered in their ability to even learn of and apply for appointment to the vacant positions under the FCIP program.

## CAUSE OF ACTION

31. OPM is required to prescribe rules which provide for the appointment of employees to the federal service through competitive examination.  5 U.S.C. § 3304.  OPM may only allow for exceptions to the competitive examination requirement where "necessary" and "warrant[ed] by conditions of good administration."  5 U.S.C. § 3302.

32. OPM's regulations providing for FCIP hiring authority violate 5 U.S.C. 3302 and 3304 because they are not based on any showing by OPM that they are "necessary" or "warranted by conditions of good administration."  Accordingly, their promulgation by OPM was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706.

## REQUEST FOR RELIEF

WHEREFORE, base on the foregoing, plaintiff requests judgment against the defendant:

A.   Declaring that OPM's regulations permitting agencies to use non-competitive FCIP hiring authority are arbitrary, capricious, contrary to law, null, and void;

B.   Prohibiting federal agencies from continuing to exercise any of the authority granted by such regulations;

C.   Ordering the defendant to pay a reasonable amount of plaintiff's attorney fees as determined by the Court; and

D.   Granting such other relief as the Court deems just and proper.

Respectfully submitted,

*Gregory O'Duden / by TH*

GREGORY O'DUDEN
General Counsel
D.C. Bar No. 254862

*Elaine Kaplan*

ELAINE KAPLAN
Senior Deputy General Counsel
D.C. Bar No. 292441

LARRY J. ADKINS
Deputy General Counsel
D.C. Bar No. 425653


TIMOTHY B. HANNAPEL
Assistant Counsel
D.C. Bar No. 418245

NATIONAL TREASURY EMPLOYEES UNION
1750 H Street, NW
Washington, DC 20006
Telephone:  (202) 572-5500
Facsimile:  (202) 572-5645

Date: _____    Attorneys for Plaintiffs

ceives on TEPS in as streamlined and uniform manner before the implementation of these changes.

11. A TEPS training program will be developed for employees, stewards, TEPS Coordinators and managers. Stewards will receive the same training as provided managers.

12. The recommendation of the Joint TEPS Redesign Committee dated 4/18/96 will guide the development of TEPS, absent the agreements described above.

# Article 13
# Promotions/Other Competitive Actions

## Section 1
## Purpose

**A.**

The parties recognize the importance of a systematic and equitable process that affords long-term employees opportunities to work in the location of their choice and provides bargaining unit employees the maximum opportunity to develop and advance to their full potential, consistent with the recognized need of the Employer to maintain staffing and skill levels sufficient to meet mission requirements. Thus, the Employer has determined that the area of consideration for bargaining unit positions announced under the provisions of Article 13 will be Service-wide and that the organizational assignment, as well as the geographic location of the candidate, except when related to a priority entitlement listed in subsection 2D, will not be used as an evaluative factor when filling vacant positions.

**B.**

Except as provided in subsection 1C below, the Employer has determined that it will provide first consideration to IRS employees for its bargaining unit vacancies by considering the "best qualified" (BQ) candidates at all grades for which a position is announced.

1. In this regard, the Employer may simultaneously post vacancy announcements for, and separately rate, rank, and assess, as applicable, both internal and external candidates for such vacancies. However, the certificate(s) listing internal Best Qualified (BQ) candidates, as determined according to the procedures set forth in this Article, will be referred first to the selecting official for final consideration.

2. Under no circumstances will the selecting official be permitted to review and/or consider external candidates prior to making a final determination regarding the selection or non-selection of internal BQ candidates. Once the selecting official has made final select/non-select determinations regarding internal candidates, the certificate(s) listing external BQ candidates may be referred for consideration.

**C.**

In those circumstances where the Employer determines that, for business reasons, it has a requirement to concurrently consider external candidates in certain entry/developmental professional and administrative (that is, two-grade interval) positions below the journey grade level, the IRS Chief Human Capital Officer will provide written notice, with appropriate explanation of those business reasons, to the NTEU National President. Such notice/explanation shall be provided at least thirty (30) days in advance of the external announcement posting date.

1. When concurrently considering internal and external candidates for bargaining unit positions, the Employer has determined that selections will be made from within the IRS whenever the employees who are eligible for consideration are as well qualified as those available from outside the IRS.

2. When the Employer concurrently considers external candidates, it will, in all cases, provide a written narrative explanation (normally one to two pages in length) to each non-selected internal BQ candidate providing reasons for his or her non-selection, as well as feedback concerning what the employee can do to improve his or her chances for selection when applying for similar vacancies in the future.

**D.**

The Employer will provide the National Office of the Union, as well as the appropriate local chapter/joint council with a yearly accounting of the number of bargaining unit vacancies by grade and series filled with bargaining unit employees and those filled with non-bargaining unit employees. The information will also include the retention rate for external selectees for the prior year. The parties will review these statistics in the context of IRS Policy Statement P-0-4 to discuss the extent to which selections have been made from within the IRS. This discussion will not focus on individual selection actions.

**E.**

The Employer agrees that where OPM establishes a positive education requirement in accordance with 5 CFR 300, the Employer will provide NTEU with copies of the validation study or studies that

**ARTICLE 13**

support that requirement, as well as other pertinent information. Such information shall be furnished at least sixty (60) days prior to the use of the positive education requirement in a vacancy announcement. In this regard, the Union agrees to comply with any security and/or confidentiality requirements established by the Employer with regard to release of the validation study or studies to the Union in accordance with this section.

**F.**

If the Employer elects to announce a vacancy externally, it will provide information to employees on how to apply as an external candidate.

## Section 2
### Applicability

**A.**

The provisions of this section apply to all placement actions within the bargaining unit except those specifically excluded by subsection 2B. Examples of such actions are:

1. filling a position by promotion;

2. filling by reassignment, transfer, reinstatement, or demotion to a position with a higher graded full performance level than any position permanently held by the applicant;

3. filling a position by temporary promotion for more than one hundred and twenty (120) days;

4. permanent or temporary conversion for more than one hundred and twenty (120) days, from one work schedule to another, for example, a seasonal or career / career–conditional, intermittent employee to regular full time or part-time, or a career/career–conditional intermittent employee to a seasonal tour of duty;

5. filling a position by reassignment if a vacancy announcement has been posted, unless:

   a. unforeseen circumstances of an extraordinary nature become known subsequent to the posting of a vacancy announcement;

   b. a roster has been established; or

   c. the Employer uses the reassignment procedure described in Article 15.

**B.**

The following are examples of placement actions within the bargaining unit which are not covered by the competitive procedures of this Article:

1. reassignments or change to lower grade except as set forth in subsections 2A2 and 2A5;

2. promotions to positions which have been upgraded without significant change in duties

and responsibilities on the basis of either the issuance of a new classification standard or the correction of a classification error;

3. repromotion to grades or positions from which an employee was demoted within the Service without personal cause, i.e., without misconduct or inefficiency on the part of the employee and not at the employee's request;

4. promotion to higher grade position, a requirement of which is specific training meeting the standards of 5 CFR 300, provided selection for such training was made in accordance with this Agreement;

5. promotion of occupants of career ladder positions to the full performance level;

6. Government–wide special emphasis programs (such as VRA, Handicapped, Worker Trainee, and Cooperative Education Programs) up to and including conversion into the competitive service;

7. any other mandatory exceptions provided for by law, Government-wide regulation or Executive Order;

8. promotion due to accretion of duties where all employees performing the same work will be promoted;

9. filling positions by reinstatement or transfer except as set forth in subsection 2A2;

10. filling a position by temporary promotion of one hundred and twenty (120) days or less;

11. increases in work schedule of one hundred twenty (120) days or less;

12. returning an employee to a full time tour of duty who has previously received a change to a part–time tour of duty (similarly situated employees will be treated equally);

13. the filling of bargaining unit positions with non-bargaining unit employees, but only after bargaining unit employees are first considered through the Article 13 competitive procedures for the vacant position.

**C.**

The following procedures apply when considering external applicants for journey level and below vacancies in accordance with subsection 1B:

1. in any given POD, all vacancies will be announced and internal selections will be made before any external selectees enter on duty;

2. POD assignments for external selectees may not be made until post–of–duty assignments for internal selectees have been made; and

3. the Employer will provide on the Career Opportunity Listing (COL) information regarding IRS positions announced for external com-

petition. The information will include instructions on accessing the OPM Job Vacancy Website. In addition, prior to announcing IRS positions through the external process, the Employer will publicize in the commuting area of the vacant positions the availability of such positions through for example newsletters and memoranda.

**D.**

In accordance with governing law and regulation, the following actions, in the order set forth below, will be taken prior to the initiation of the competitive procedures established by this Article:

1. Employees with statutory placement rights (such as an IRS employee who is returning to duty from Worker's Compensation or military service);

2. Employees with placement rights established pursuant to a decision or settlement agreement directed or approved by a third–party adjudicatory agency, such as the Merit Systems Protection Board or Equal Employment Opportunity Commission;

3. IRS employees with placement rights as established by the Career Transition Assistance Program (CTAP);

4. Employees with placement rights established by the IRS Priority Placement Program (IR-SPPP);

5. Employees granted Priority Consideration in accordance with 5 CFR 335;

6. Employees with Reassignment Preference in accordance with Article 19: and

7. Employees who are eligible for a hardship assignment, pursuant to Article 15.

## Section 3
### Vacancy Announcements

**A.**

Vacancy announcements will be published prior to taking any of the placement actions described in subsection 2A for which bargaining unit employees may compete. In this regard, vacancies within a particular commuting area listed on the Service's Career Opportunity Listing (COL) will be posted on appropriate bulletin boards within that commuting area unless electronic media is available. The vacancy announcement will be posted for ten (10) workdays and at a minimum will contain the following:

1. announcement number;

2. opening and closing date;

3. the number, title, series, grade, and organizational location(s), and Post of Duty (POD) of

the vacant position(s) to be filled. In no case may a position be filled unless the Employer has announced via the vacancy announcement and/or COL, the POD and the number of positions in that POD. Nothing in this section requires the Employer to fill a particular position in a particular POD; however, when the Employer announces multiple positions in multiple PODs, whether by roster or individual vacancy announcement and if the Employer decides to announce a vacancy or vacancies in multiple PODs before determining where to place the position(s), it may only select from a single consolidated BQ list that has the top four (4) candidates (or more if appropriate to the number of vacancies);

4. shift information, for example, hours of work;

5. minimum qualifications required;

6. a brief summary of the duties of the position along with an indication of where additional information may be obtained;

7. selective placement factors, if any;

8. evaluative methods to be used by the ranking panel or official, including any specific forms to be considered, interview and/or test requirements, etc. (none of which may be used unless listed on the announcement);

9. roster designation, when applicable;

10. statement of Service's commitment to equal employment opportunity in conformance with the Plain Talk About Ethics and Conduct;

11. where to submit applications;

12. position's career ladder, when appropriate;

13. statement of availability of moving expenses; and

14. in the case of seasonal employment, the expected length of season, as well as the expected eligibility for health insurance.

**B.**

The Employer has determined that selective placement factors will only be used in determining eligibility when they are essential to successful performance in the position to be filled. In such cases, they will constitute a part of the minimum requirements of the position in question.

**C.**

Changes to vacancy announcements of a non–substantive nature (that is announcement number and the number of vacancies, where the increase is less than four) will not require extension of the posting time.

**ARTICLE 13**

**D.**

Two (2) copies of all bargaining unit vacancy announcements will be sent to the president of each chapter that has representational jurisdiction over the position(s), concurrent with the posting. Where electronic media is available, vacancy announcements will be transmitted via electronic media only. Where electronic media is not available, vacancy announcements will be posted on all official bulletin boards throughout the commuting area.

**E.**

Vacancy announcements will be posted in all locations within the same commuting area.

**F.**

If a vacancy announcement is canceled, the reason for the cancellation shall be noted on the promotion certificate and/or made part of the promotion file. A copy of the document showing the reason will be simultaneously sent to the chapter/joint council.

**G.**

In October of each year, the Employer will assign awards points to all employees who qualify for an award under the Parties' National Awards Agreement.

**H.**

**Modifications to Qualifications**

In any competitive action where the qualification requirements are being modified, the Employer shall state on the vacancy announcement what the modified minimum qualification requirements are. In addition, a statement that qualification requirements have been modified shall be included on the vacancy announcement.

1. The Employer shall reduce to writing the reasons for electing to modify qualification requirements in connection with a competitive action. This determination must state the reason(s) for modifying the qualification requirements.

2. Prior to posting the vacancy announcement, all chapters that have representational jurisdiction over the position being filled shall be provided a copy of this determination and afforded five (5) workdays within which to comment and/or discuss the determination with the Employer. The Employer shall consider any input provided by the local chapter(s).

## Section 4

**Application Procedures – General**

**A.**

1. Employees must submit applications for each vacancy or roster for which they wish to be

considered. An individual application may be submitted for each available vacancy at the time of the vacancy announcement or employees may submit applications for continuous consideration (Form 4536, Exhibit 13–1) which shall expire at close of business on December 31 of each year. Employees may indicate on the applications for continuous consideration the posts–of–duty for which they desire to be considered. Employees may withdraw applications for a position at any time. The fact that employees do not accept an offer of promotion will not be cause for their removal from a roster.

2. Vacancies for all positions that are to be filled by competitive action will be announced separately.

3. Each employee who has applied for and meets the eligibility requirements and any selective placement factors previously announced for a vacancy shall be ranked as described below, using the performance appraisal Form 6850-BU or Form 6850-NBU, Critical Job Element Appraisal, as prepared in accordance with Article 12 of this Agreement.

4. Applicants will not be considered if they do not meet all time–in–grade and qualification requirements by the closing date of the announcement.

5. In promotion actions, the employee's most recent annual rating of record, as described in Article 12, will be used as the employee's performance appraisal. In the event the employee has no previous annual rating of record, the supervisor will prepare a merit promotion appraisal for the employee in accordance with Article 12.

6. The employee's performance appraisal Form 6850-BU or Form 6850-NBU will be forwarded to the ranking panel or ranking official considering the vacancy or vacancies applied for by the employee and will not be altered or changed in any manner by the panel or ranking official.

7. In accordance with Article 12, if the revalidated appraisal is to be used for merit promotion, the supervisor must prepare a narrative for each critical job element that does not have a narrative describing the performance in the appraisal period covered by the rating.

8. Upon request, applicants who have been determined not to be qualified will be provided a copy of the qualification standards for the position for which they applied.

9. For all positions, applicants must complete an application as specified on the vacancy

announcement. The ranking official or panel will use this application in conjunction with the applicants' appraisals to determine each applicant's potential. In order to complete this application, each applicant will receive a reasonable amount of administrative time and will be provided access to his or her OPF.

  a.  When an employee's application is found to be lacking information within the employee's control (such as a signature), the Employer will notify the employee and give him or her five (5) workdays to submit the missing information. For information beyond the employee's control (such as a college transcript), the employee will have a reasonable period of time, up to ten (10) workdays, to submit the information. In the event that the missing information is not received within the time period(s) specified above, the application will be returned to the employee and the employee will not be considered as an applicant for the vacancy.

  b.  If the Employer has failed to issue a timely and current performance appraisal, the employee may submit his or her self assessment, in accordance with Article 12, provided that such self–assessment proposes a summary rating no higher than the employee's current rating of record.

10.  An employee who applies for a position and is not found eligible will be notified prior to the establishment of a roster or a BQ list.

**B.**

**Establishment of a Roster**

1.  If the Employer projects more than one (1) vacancy will occur in any one (1) classification series and grade level in a twelve (12) month period, the Employer may establish and maintain a roster of candidates for as long as twelve (12) months.

2.  When rosters are used, they will be updated quarterly to include new applicants.

3.  An application for a position on a roster must be received by the closing date of the announcement establishing the roster, or at least fifteen (15) workdays prior to any quarterly updating of the roster. Employees who are not eligible for consideration will have their applications returned showing the reason for their disqualification or ineligibility. Applicants accepted for a roster will be so notified.

4.  Eligible applicants will remain on the roster for one (1) year. At the end of the year, applicants

will be notified that they must submit new applications if they wish to be considered for future vacancies.

5.  When a roster is used, applicants meeting basic qualifications will be ranked and placed in numerical order from the highest to the lowest score.

6.  NTEU will be provided with copies of rosters when they are established.

**Section 5**

**Ranking Applicants**

**A.**

**General**

With the exception of bargaining unit employees covered under subsection 5E, employees (including Wage Grade employees) who applied for and met the eligibility requirements for a vacancy (including any selective placement factors previously established and announced by the Employer) shall be ranked as described below. No other procedures will be used to rate and rank bargaining unit employees for bargaining unit positions unless the Employer has made the details, criteria, and other characteristics of the process fully known to the Union in advance, in accordance with Article 47. When ranking candidates for vacancies at multiple grades (e.g., for career ladder positions that may be filled at any grade), each candidate will be ranked separately by grade, with the ranking procedure for such positions based on the journey level of the position to be filled.

**B.**

In processing competitive actions covered by Section 2 of this Article, the following provisions will be used to evaluate and rank applicants for any position unless otherwise specified in subsection 5D.

1.  Employees will be ranked as described below, using Form 6850-BU or Form 6850-NBU, Critical Job Element (CJE) Appraisal, as prepared in accordance with the provisions of Article 12 of this Agreement.

2.  The Employer will appoint a ranking panel of three (3) voting persons, or will appoint a ranking official, to evaluate the applicants. The Employer has determined that the selecting official may not serve on a ranking panel or as a ranking official. The ranking panel or ranking official will then determine the score ("5" to "1") to be assigned to an applicant for each critical job element of the position to be filled. A score will be assigned for each critical job element as follows:

  a.  Excellent Potential          "5"

  b.  Substantial Potential        "4"

ARTICLE 13

c. Good Potential "3"

d. Moderate Potential "2"

e. Limited Potential "1"

3. The Employer has determined that the standards for the foregoing ratings will be as follows:

   a. Rating Level "5":  Excellent Potential: The applicant is now able to perform at a level which is above fully successful on this critical job element.

   b. Rating Level "4":  Substantial Potential: The applicant is now able to perform at a level which is fully successful on this critical job element.

   c. Rating Level "3":  Good Potential: The applicant can be expected to perform at a level which is fully successful on this critical job element after minimal developmental training and/or experience.

   d. Rating Level "2":  Moderate Potential: The applicant can be expected to perform at a level which is fully successful on this critical job element only after considerable developmental training and/or experience.

   e. Rating Level "1":  Limited Potential: The applicant can be expected to perform at a level which is fully successful on this critical job element only after extensive additional developmental training and/or experience.

C.

1. The Employer has determined that the following procedure shall be used for ranking applicants for a position that is not covered by subsection 5E.

   a. Add the numerical rating for each critical job element on Form 6850-BU or 6850-NBU, divide the total by the number of CJEs, and multiply the results by six (6);

   b. Add the average ratings for each critical job element of the position to be filled together, divide the total by the number of critical job elements, and multiply the results by four (4);

   c. Add the total scores obtained in (a) and (b) above; and

   d. Round–off scores to two (2) decimal places only;

   e. *Add one (1) point (up to a maximum of three (3) points) for a performance award in accordance with the Joint*

*Performance Award Agreement, and for each Quality Step Increase (QSI), or performance–related monetary Special Act Award (except Manager's Awards) approved in the last three (3) years;*

   f. In accordance with applicable laws, rules and regulations, the four applicants who rank at the top will be designated as Best Qualified (BQ).

2. The Employer has determined that individual members of the ranking panel or the ranking official will individually rate each critical job element for each applicant. Each member's rating shall become a part of the promotion file. The scores given for each applicant by each member of the ranking panel will then be added and divided by the number of members on the ranking panel to obtain the final numerical score for each critical element.

   a. The Employer has determined that the ranking panel or the ranking official will prepare one (1) written narrative or statement concerning each applicant considered for each critical job element of the position to be filled. This narrative statement will reflect the applicant's ability to perform in the position for which the applicant is being considered. If the immediate supervisor of any applicant is a member of the ranking panel, then each panel member will prepare separate narratives. Any conclusion relative to the rating of potential will be reflected in the narrative and include information upon which the rating was based, citing the factor(s) relevant to the rating.

   b. The evaluation will be fair and objective. Any conclusion relative to the rating of potential will be reflected in the narrative and include information upon which the rating was based, citing the factor(s) relevant to the rating. In no case will a rating be justified solely by a mathematical tabulation of scores on any document(s), for example, an annual appraisal.

D.

As an alternative to the provisions above, when filling vacancies above the journey level, if all eligible candidates are currently in the same series as the position to be filled, the Employer will multiply the average critical job element rating from the employee's appraisal by ten (10). *This score plus the performance related award points will be used to establish the BQ list in rank order.* If any eligible candidate has a different set of performance

---

* The Bold, Italicized language was disapproved by the Department of Treasury

aspects or additional performance aspects, the Employer will use the ranking process outlined above.

**E.**

**Ranking of Applicants for Positions GS–8 and below Located in the Submission Processing, Accounts Management, and Compliance Service Centers, including geographically aligned Call Sites.**

The Employer has determined that the ranking of applicants for GS–8 and below positions will be accomplished in the following manner:

1. Performance Appraisal: The employee's performance appraisal based on the critical job elements of the employee's position (Form 6850-BU or 6850-NBU) will be used as follows:

   a. add the numerical ratings for each critical job element;

   b. divide the total in (a) above by the number of critical job elements;

   c. multiply the result in (b) above by twenty–eight (28); and

   d. the results in (c) above is the number of points that are assigned the performance appraisal for ranking purposes.

2. Pertinent Experience and Training: The applicant's experience and training will be reviewed by a ranking official who will assign up to a maximum of twenty–five (25) points at the rate of five (5) points for each full six (6) months experience and training pertinent to the job to be filled which usually will have been gained in work of same type as that to be performed in the vacant position. In order to be included in the six (6) month period, the experience and training must have been gained within two (2) grades below the vacancy and must have been acquired within three (3) years of the date of application. The Employer will ensure that pertinency points are defined and applied consistently across the Campuses, through the issuance of Service-wide guidance. The committee the parties agreed to in Article 12, subsection 14H will also discuss and recommend methods for achieving greater uniformity in applying pertinency points on a Service-wide basis.

3. *Incentive Awards: Incentive awards, including Quality Step Increases approved for the employee within three (3) years prior to the closing date of the announcement will be evaluated by the ranking official who will award ranking points (up to a maximum of five (5) as detailed below:*

   a. *Two (2) points for each Quality Step Increase;*

   b. *Two (2) points for each PMS Performance Award;*

   c. *Two (2) points for each Suggestion Award of $150 or more;*

   d. *One (1) point for each other Suggestion Award;*

   e. *One (1) point for each monetary Special Act Award (except Manager's Awards) that is performance related and non-mandatory (total points awarded not to exceed three (3) points); and*

   f. *One (1) point for each accepted system change.*

4. The total scores obtained in 1, 2 and 3 above will be added together to determine the Best Qualified list of candidates. For vacancies at grade GS–8 and below covered by this subsection, applicants meeting basic qualifications will be ranked and placed in numerical order from the highest to the lowest score.

## Section 6
### Referral of Candidates

**A.**

All applicants will be treated uniformly to the greatest extent possible. Applicants who are candidates for reassignment will be rated and ranked along with other applicants.

**B.**

Any selection technique utilized by the selecting official will be uniformly applied to all BQ applicants referred to the selecting official.

**C.**

An employee's accumulation or balance of annual or sick leave may not be considered by the ranking panel or ranking official, a selecting official, or manager as a basis for selection or promotion.

**D.**

If the Employer determines to interview any employees in a selection process, all similarly situated employees will be interviewed.

1. Questions used in the interview process and the Employer's notes will be recorded and kept in the file. This shall not be construed to require the panel to ask identical questions of each applicant.

2. If the Service decides to use "Behavioral Event Interviewing" with respect to the staffing of any bargaining unit position, the Employer will provide notice to the Union at the national level and afford the Union the opportunity to negotiate in accordance with law and this Agreement.

* The Bold, Italicized language was disapproved by the Department of Treasury

**ARTICLE 13**

3. When interviewing applicants for placement, the Employer will comply with OPM regulations.

**E.**

The selecting official will receive a list of Best Qualified (BQ) applicants in rank order along with evaluation material.

**F.**

The BQ applicants will be the top four (4) applicants plus one (1) additional name for each additional vacancy. Up to ten (10) applicants may be certified if certifying a lesser number results in the exclusion of any equally qualified applicant. If there are more than ten (10) equally qualified candidates, ties will be broken first using the highest annual appraisal score and second using the highest ranking of potential score (GS-9 and above positions) or most pertinency points (GS-8 positions and below). If a tie remains, all tied candidates will be referred. An employee will not be removed from the BQ list of a pending package because he or she has accepted another position unless he/she withdraws from consideration from that pending package.

## Section 7
### Selection and Documentation

**A.**

Upon conclusion of the ranking process, a promotion certificate shall be prepared by the Employer. It will contain the following information:

1. names of all applicants found BQ (and scores if applicable);

2. identification of applicants as permanent or seasonal;

3. names of applicants submitted to the selecting official;

4. name(s) of the management official or ranking panel members who evaluated the applicants;

5. evaluation criteria and methods used to determine BQ applicants;

6. the name of selecting official; and

7. the names of selected applicants.

**B.**

1. Upon selection and notification of applicants for promotion, a designated Union official in each of the chapters that has representational jurisdiction over the positions being filled will be concurrently sent a copy of the promotion certificate previously given to the selecting official. The promotion certificate will identify the selected applicant(s).

2. Where the Union has properly requested documents from the performance file, and the documents are not timely provided during the steps of the grievance process, with the result that the Union has to invoke arbitration without having the chance to review the documents and/or begin the arbitration hearing without the documents, the arbitrator will be permitted to reapportion between the parties the costs of the hearing as well as draw an adverse inference against the Employer for its failure to timely provide the documents.

**C.**

The Employer will maintain a copy of all promotion certificates for a period of at least one (1) year. The Employer will maintain promotion or competitive selection files in accordance with regulatory requirements.

**D.**

In the case of roster announcements:

1. the promotion certificate with names of all the BQ will be furnished to the Union at the time the roster is established and also after each quarterly updating;

2. after selections from a roster, the Union will be furnished the list of BQ applicants referred to the selecting official, with the selected applicant(s) identified; and

3. all BQ applicants will be notified of their standing on a roster at the time the roster is established.

**E.**

Additional positions of the same kind (that is, those with the same title, series and grade, at the same POD, and same group or unit) may be filled within forty-five (45) days of the initial selection in cases where vacancies remain or occur within the forty-five (45) days. In such cases, the originally selected employee will be replaced on the new BQ list if appropriate.

**F.**

Notification of non-selected applicants on the BQ list will be made (either via telephone, email or other means, whenever possible) within 8 hours of their receipt of the selection certificate. Non-selected applicants on the BQ list for vacancies in Submission Processing, Accounts Management, and Compliance Services Centers, to include geographically aligned call sites will be notified through either the Automated Vacancy Announcement System or other automated personnel systems within one (1) pay period, whenever possible.

## Section 8
**Career Ladder Promotions**

**A.**

Employees in career ladder positions will be promoted in the first pay period after:

1. they become minimally eligible to be promoted (after one (1) year in their positions or whatever lesser period satisfies the basic eligibility requirements); and

2. they are capable of satisfactorily performing at the next higher level.

**B.**

For employees whose elements and standards are no different than those of the next higher grade level in the career ladder, an overall annual rating of Fully Successful at the current grade will satisfy the performance requirements.

## Section 9
**Miscellaneous**

**A.**

The fact that an employee is the subject of a conduct investigation will not prevent or delay the employee's promotion, which would otherwise be made, unless the Employer judges that such delay is necessary to protect the integrity of the Service.

**B.**

Subject to its right to assign employees, the Employer will make a reasonable effort to return employees to their former or like positions, who, within the last year, were promoted and subsequently demoted for inability to perform at the higher level. Employees hired through an external source will be required to serve a probationary period in accordance with Articles 30 and 37. However, if the employee has already served a probationary period with IRS and does not successfully complete the probationary period and/or the formal training agreement required for the new position, as applicable, the Employer will make every effort to reassign the employee to their previous grade and same or similar position.

**C.**

For employees who are selected for a promotion and are not required to attend any initial classroom training (e.g., Unit I training), the promotion will be effective no later than one (1) complete pay period following selection. For employees who must first complete training, the promotion will become effective at the beginning of such training.

**D.**

Any applicant designated BQ who is not selected will, upon request, be entitled to counseling by the immediate supervisor or his or her designee. In those instances where the immediate supervisor is not the selecting official, the applicant may, upon request, obtain additional counseling from the selecting official or his or her designee. The counseling will provide the reasons for his or her non-selection, as well as feedback concerning what the employee can do to improve his or her chances for selection when applying for similar vacancies in the future.

**E.**

In accordance with applicable laws, rules and regulations, any applicant on the BQ list who declines in writing a selection offer will be replaced by the next higher ranking qualified applicant.

## Section 10
**Release of Information**

**A.**

Upon request, the Employer will make available to any applicant involved in a competitive action governed by the terms of this Article the ranking panel's or ranking official's written narrative statement (if required by this article) and score assigned to the applicant. Such request should be made through the applicant's supervisor.

**B.**

In the processing of grievances related to actions taken under the terms of this Article, a steward representing an employee will, upon request, be furnished the "evaluative material" generated or utilized by the ranking panel or ranking official in assessing the qualifications of the eligible applicants (bargaining unit and non–bargaining unit) in regard to a grieved promotion action subject to the following criteria:

1. the aforementioned material, consisting of the panel's evaluation, managerial appraisals, and records related to experience, training and awards, will be provided to the grieving employee's steward subject to the Employer's legal responsibility and obligation to protect the privacy of the eligible applicant(s) involved in the promotion in question;

2. if the grievance is confined to BQ applicants, only the evaluative material of such applicants will be provided; and

3. if the grievance involves questions of basic eligibles, evaluative material of all applicants will be provided.

**C.**

Challenges to the Employer's action in the implementation of subsection 10B above, if any, may be grieved and finally resolved by an arbitrator making

an "in camera" inspection of the entire promotion file, subject to the "privacy" protection cited above.

## Section 11
### Priority Consideration

**A.**

If it is determined, through the grievance procedure, that violations of the provisions of this Article resulted in denying the grievant(s) proper consideration, corrective action will be taken as follows:

1. employees erroneously omitted from a BQ list shall receive priority consideration in accordance with regulatory requirements;

2. employees who were erroneously omitted from, or improperly ranked on a roster announcement, but who do not otherwise qualify for relief under subsection 11A1 above, will be ranked in proper order on such a roster; and

3. other violations will be remedied as appropriate.

**B.**

Priority consideration consists of a promotion certificate which contains an employee's name alone being sent to a selecting official before the official considers other applicants for a position.

**C.**

An employee will be entitled to a separate priority consideration for each vacancy announcement for which the employee was improperly considered.

**D.**

If more than one (1) employee is entitled to consideration, the names of only those employees will be submitted on a single certificate to the selecting official for the next appropriate vacancy.

**E.**

If the appropriate vacancy has already been announced, the employees due the priority consideration will be considered by the selecting official before other applicants are ranked or referred for selection.

**F.**

When the Employer considers employees who have priority consideration pursuant to this Agreement and does not select those employees, the Employer will put the reasons for non-selection in writing and serve a copy simultaneously on the employees.

**G.**

Once the deadline for filing a grievance or other complaint has passed, employees who have not filed a grievance or other complaint or had one filed

on their behalf may only be given priority consideration pursuant to an order issued by a higher level authority.

**H.**

In accordance with 5 CFR Part 335, employees normally receive priority consideration for an appropriate vacancy. In those circumstances where no appropriate vacancy is anticipated in the original commuting area within two (2) years from the date priority consideration is granted, the employee's priority consideration will be extended to apply to similar vacancies within the original commuting area, provided the employee meets basic eligibility requirements.

# Article 14
# Release/Recall Procedures

## Section 1
### General Provisions

**A.**

The provisions of this article apply to all employees of the Internal Revenue Service subject to periodic release and recall.

**B.**

Unless the local parties agree otherwise, the basis for release and recall at Center Campuses will be Departments in the Accounts Management Centers and Operations in the Submission Processing and Compliance Services Centers.

**C.**

For all other employees subject to release and recall, unless agreed to otherwise by the local parties, the basis for release and recall will be the highest organizational level at the post-of-duty (POD).

## Section 2

**A.**

Basis For Release/Recall

1. The release and recall of career/career-conditional intermittent employees will be by IRS Enter On Duty (EOD) date of those employees possessing the skills needed.

2. The release and recall of seasonal employees and employees on term appointments will be accomplished by a combination of performance and seniority of those employees possessing the skills needed.

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| National Treasury Employees Union    //oo/ | Linda M. Springer, Director U.S. Office of Personnel Management |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ——— 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Gregory O'Duden, Elaine Kaplan, Larry Adkins and Timothy Hannapel
National Treasury Employees Union
1750 H Street, N.W.
Washington, D.C. 20006
(202) 572-5500

CASE NUMBER  1:07CV00168

JUDGE: Richard W. Roberts

DECK TYPE: Administrative Agency Rev

DATE STAMP: 01/24/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

● 2 U.S. Government Defendant

○ 3 Federal Question (U.S. Government Not a Party)

○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZE
FOR PLAINTI... ...D... ...OR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. *Antitrust* | ○ B. *Personal Injury/ Malpractice* | ⊙ C. *Administrative Agency Review* | ○ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane ☐ 315 Airplane Product Liability ☐ 320 Assault, Libel & Slander ☐ 330 Federal Employers Liability ☐ 340 Marine ☐ 345 Marine Product Liability ☐ 350 Motor Vehicle ☐ 355 Motor Vehicle Product Liability ☐ 360 Other Personal Injury ☐ 362 Medical Malpractice ☐ 365 Product Liability ☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act **Social Security:** ☐ 861 HIA ((1395ff) ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g) ☐ 864 SSID Title XVI ☐ 865 RSI (405(g) **Other Statutes** ☐ 891 Agricultural Acts ☐ 892 Economic Stabilization Act ☐ 893 Environmental Matters ☐ 894 Energy Allocation Act ☒ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment. *(If Antitrust, then A governs)* |

| ○ E. *General Civil (Other)* | OR | ○ F. *Pro Se General Civil* |
|---|---|---|

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

③

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding    ○ 2 Removed from State Court    ○ 3 Remanded from Appellate Court    ○ 4 Reinstated or Reopened    ○ 5 Transferred from another district (specify)    ○ 6 Multi district Litigation    ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Administrative Procedure Act (5 USC 706) challenge to OPM's regulation establishing the Federal Career Intern Program (5 CFR 213.3202(o)

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint    JURY DEMAND: YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE 1/24/07    SIGNATURE OF ATTORNEY OF RECORD _Timothy B. Hannapel_

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.