# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**
National Treasury Employees Union

**DEFENDANTS**
Linda M. Springer, Director
U.S. Office of Personnel Management

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Gregory O'Duden, Elaine Kaplan, Larry Adkins and Timothy Hannapel
National Treasury Employees Union
1750 H Street, N.W.
Washington, D.C. 20006
(202) 572-5500

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**● C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)** OR **○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Administrative Procedure Act (5 USC 706) challenge to OPM's regulation establishing the Federal Career Intern Program (5 CFR 213.3202(o)

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 1/24/07   SIGNATURE OF ATTORNEY OF RECORD _Timothy B. Hannapel_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT:  The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION )<br>1750 H Street, NW )<br>Washington, DC 20006 )<br>(202) 572-5500 )<br>)<br>       Plaintiff, )<br>)<br>       v. )<br>)<br>LINDA M. SPRINGER, Director )<br>U.S. Office of Personnel )<br> Management )<br>1900 E Street, N.W. )<br>Washington, D.C.  20415 )<br>(202) 686-1800 )<br>)<br>       Defendant. )<br>) | CIVIL ACTION NO. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**INTRODUCTION**

This action challenges the legality of regulations issued by the U.S. Office of Personnel Management (OPM) which authorize federal agencies to hire applicants for federal civil service positions under the "Federal Career Intern Program" (FCIP). That program provides agencies with broad discretion to depart from the carefully designed competitive examination and selection requirements that have been the cornerstone of the merit-based federal civil service system since its inception. It does so notwithstanding that competitive procedures were intended to be "the norm rather than the exception" (National

Treasury Employees Union v. Horner, 854 F.2d 490, 495 (D.C. Cir. 1988)) and notwithstanding that civil service law permits departures from the use of competitive procedures only where "necessary" for "conditions of good administration" (5 U.S.C. §3302).

The FCIP was originally proposed and implemented on an interim basis in 2000, and became a permanent hiring authority as a result of final regulations issued in 2005.  Both as proposed and finalized, the FCIP program gives the appearance of being a limited, special focus hiring program.  It was purportedly intended to provide formally-structured 2-year training and development "internships" as a strategic tool to target recruitment of "exceptional men and women" for the Federal workforce.  Over time, however, the FCIP program has become the hiring method of choice for many federal jobs, including positions at such NTEU-represented agencies as the Internal Revenue Service (IRS), the Department of Homeland Security's Bureau of Customs and Border Protection (CBP), and the Federal Deposit Insurance Corporation (FDIC).  Its use has increased so dramatically that FCIP hiring threatens to supplant the competitive examination process as the primary means of entry into the competitive service.

The FCIP program undermines the public interest in the merit based civil service, contrary to statutory merit systems

principles. Those principles require, among other things, that "selection and advancement" in the civil service be determined "on the basis of relative ability, knowledge and skills, after fair and open competition which assures that all receive equal opportunity." 5 U.S.C. § 2302(b)(1).

The program also directly injures NTEU-represented employees in several respects. First, when agencies fill jobs using their FCIP hiring authority, NTEU represented-employees, as well as all other applicants, are deprived of the opportunity to be competitively examined under the fair and open process prescribed by the statute and regulations governing appointments to the competitive service. Second, NTEU-represented employees who have been hired under the FCIP authority are harmed because they are subject to a de facto 2-year (or in some cases, 3-year) probationary period, instead of the 1-year period that generally applies to entry-level positions in the competitive service. Finally, IRS employees represented by NTEU suffer an additional injury, because use of FCIP hiring authority in place of established competitive procedures divests internal applicants of important rights and benefits provided by the NTEU-negotiated collective bargaining agreement.

In this action, NTEU seeks a declaration that the final FCIP regulations are arbitrary, capricious, and contrary to law (specifically, 5 U.S.C. §§ 3302 and 3304). It also seeks

3

injunctive relief invalidating OPM's FCIP regulations, and prohibiting federal agencies from continuing to use FCIP hiring authority to select employees for competitive service positions.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

2.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## PARTIES

3.  Plaintiff National Treasury Employees Union ("NTEU" or the "Union") is an unincorporated association having its headquarters at 1750 H Street, NW, Washington, DC 20006. Pursuant to Title VII of the Civil Service Reform Act of 1978, Pub. L. 95-454, 92 Stat. 1111 (1978), NTEU is the exclusive bargaining representative of approximately 150,000 federal employees, including approximately 98,000 workers at the IRS, approximately 14,000 workers at CBP, and approximately 3,000 workers at the FDIC. NTEU represents the interests of these employees by, _inter alia_, negotiating collective bargaining agreements; arbitrating grievances under such agreements; filing unfair labor practice charges; lobbying Congress for favorable working conditions, pay, and benefits; and litigating employees' collective and individual rights in federal courts.

4. Defendant Linda M. Springer is the Director of the U.S. Office of Personnel Management. The Director is responsible for executing, administering, and enforcing the civil service laws and regulations, including the requirements that individuals be employed by the federal government through open, competitive examinations, 5 U.S.C. §§ 1103(a)(5); 3304(b), and that "exceptions of positions from the competitive service" may be authorized only where "necessary," and "warrant[ed]" by "conditions of good administration." Id. at § 3302(1). The Director is sued solely in her official capacity.

## STATEMENT OF CLAIMS

### Legal Requirements for Federal Hiring

5. The statute governing the employment of individuals by the federal government requires "competitive examinations for testing applicants for appointment to the competitive service." 5 U.S.C. § 3304(a). The statute also requires that, after the examination process, applicants be rated and ranked, that certain additional credit be provided to veterans, and that the agency select one of the top candidates for the position. 5 U.S.C. §§ 3311, 3313, 3318, 3319.

6. The President, through his delegatee, OPM, may make only "necessary" exceptions from the examination requirement of section 3304(a). 5 U.S.C. § 3302. Employees who hold jobs that

5

have been excepted from the examination requirement are hired into the "excepted," rather than the "competitive" service.

7.  By regulation, there are three categories of "excepted" appointing authorities. The three categories are referred to as "Schedule A", "Schedule B", and "Schedule C" authority.  See 5 C.F.R. Part 213, Subpart C.

8.  "Schedule A" hiring authority is used for positions other than those of a confidential or policy determining character where it is "impracticable to examine."  See 5 C.F.R. §213.3101.

9.  "Schedule B" hiring authority is used for positions other than those of a confidential or policy determining character where it is "not practicable to hold a competitive examination."  See 5 C.F.R. §213.3201.

10.  "Schedule C" hiring authority is used for "positions of a confidential or policy determining nature."  See 5 C.F.R. §213.3301.

### Creation of the FCIP Program

11.  OPM issued an interim rule to implement the FCIP on December 14, 2000.  See 65 Fed.Reg. 78,077 (Dec. 14, 2000). The interim rule provided that the FCIP program would be implemented through a new "Schedule B" "excepted" appointment authority, applicable to the "entire executive civil service."

12.  Nearly five years after the issuance of the interim rule, OPM issued a final rule on August 2, 2005, in which it adopted most aspects of the interim rule, with minor changes. See 70 Fed. Reg. 44,219 (Aug. 2, 2005); 5 C.F.R. § 213.3202(o).

13.  Under the final regulations, agencies have unfettered discretion to use FCIP authority to fill vacancies in virtually any position, even those for which it is practicable to hold a competitive examination.  5 C.F.R. 213.3202(o)(10)(giving agencies the authority to "determine the appropriate use of the FCIP relating to recruitment needs in geographical areas, specific occupational series, and grades, pay bands or other pay levels . . .").

14.  Agencies have a strong incentive to hire under the FCIP because such hiring is exempt from application of many of the procedural requirements that apply to positions in the competitive service.  Under the FCIP, therefore, agencies are, among other things: 1) not required to announce vacancies to the public through OPM's USAJOBS website (compare 5 U.S.C. §3330); 2) not required to follow strict rules governing the rating and ranking of applicants' qualifications (compare 5 U.S.C. §§ 3304, 3308, 3313, 3317, 3318, 3319); 3) not required to provide additional points to applicants who are veterans (compare 5 U.S.C. §§ 3309, 3313).

15. Although providing "interns" with a formally structured training and career development program is the core purpose underlying the FCIP authority, OPM's regulations set no minimum requirements for such training and development. 5 C.F.R. § 213.3202(o)(9). As a result, many "interns" are given no more training or development than any other new hire working in the same job, and, in practice, "interns" frequently work side-by-side in the same jobs with non-FCIP new hires.

16. FCIP authority also allows agencies to non-competitively convert FCIP employees, upon completion of the 2-year "internship" appointment, to career or career conditional status in the competitive service. 5 C.F.R. 213.3202(o)(6). Thus, individuals who complete their two year "internship" are given positions in the "competitive service" without ever having competed for them.

### NTEU-Represented FCIP Hires Are Injured By the Longer Probationary Period that Applies to FCIP Hires

17. When agencies use FCIP authority, the 1-year probationary period that must generally be served by employees hired for entry level jobs in the competitive service, 5 U.S.C. § 7511(a)(1)(A), is effectively doubled by the FCIP's 2-year "internship" appointment under Schedule B of the excepted service. 5 C.F.R. 213.3202(o)(1).

**18.** In 2002, the U.S. Customs Service (now CBP) began using FCIP authority as its primary method for hiring entry-level Customs Inspectors (now Customs and Border Protection Officers). CBP employees hired under the FCIP authority who are represented by NTEU are harmed by being subject to what is, in effect, a 2-year probationary period, instead of the 1-year period that generally applies to such positions when filled in the competitive service. These employees must wait an extra year before they have the right to appeal any decision to terminate their employment to the MSPB or through the negotiated grievance-arbitration procedure.

**19.** In 2006, the IRS began using FCIP authority to hire entry-level Revenue Officers and Revenue Agents. For Revenue Agents, IRS received special authority from OPM to extend the "internship" period to three years. IRS employees hired under the FCIP authority who are represented by NTEU are harmed by being subject to an effective 2-year probationary period (or a 3-year period for Revenue Agents), instead of the 1-year period that generally applies to such positions when filled in the competitive service. These employees must wait an extra year (or two years for Revenue Agents) before they have the right to appeal any decision to terminate their employment to the MSPB or through the negotiated grievance-arbitration procedure.

20. In 2005, the FDIC began using FCIP authority to hire entry-level Financial Institution Specialists, after receiving special authority from OPM to extend the "internship" period for such employees to three years. FDIC employees hired as Financial Institution Specialists who are represented by NTEU are harmed by being subject to an effective 3-year probationary period, instead of the 1-year period that generally applies to such positions when filled in the competitive service. These employees must wait an extra two years before they have the right to appeal any decision to terminate their employment to the MSPB or through the negotiated grievance-arbitration procedure

<u>NTEU-Represented Employees Who Apply For Positions Under the FCIP Program Are Injured Because They Are Denied Their Statutory Right To Compete for Jobs Pursuant to Statutorily Mandated Procedures</u>

21. Current NTEU-represented employees are permitted to apply for FCIP vacancies through the external application procedure on the same footing as members of the general public. The OPM regulations authorize agencies to fill jobs without complying with statutorily mandated competitive examination procedures described in ¶ 5 above. NTEU-represented employees, like all other applicants, are injured because they are deprived of their statutory rights to compete for the vacancies on the

basis of their relative skills and abilities, in a fair and open process.

### NTEU-Represented Employees at IRS Who Seek Promotions Are Injured by Agencies' Use of the FCIP Hiring Program

22. When an agency recruits internal candidates for competitive service positions, it must follow a merit promotion plan that conforms with guidelines established by OPM. 5 C.F.R. § 335.103.

23. Merit promotion procedures include vacancy announcement requirements, ranking criteria, methods for identifying highly qualified candidates, and rules governing the identification of a specified number of "best qualified" candidates from which the selecting official may choose a candidate for promotion.

24. At IRS, the regulatory merit promotion procedures have been incorporated within, and supplemented by, a collective bargaining agreement between that agency and NTEU, the exclusive representative of IRS employees. See 2006 IRS/NTEU National Agreement, Article 13 (Attachment 1 hereto).

25. Vacancies posted for internal candidates under agency merit promotion procedures have traditionally supplied significant opportunities for career advancement for lower graded employees of the IRS, especially those in clerical and technical jobs. The IRS Revenue Agent and Revenue Officer

positions, in particular, are often sought by lower graded employees in order to advance their careers.

26. Prior to IRS' use of the FCIP authority to hire Revenue Agents and Revenue Officers, vacancy announcements for internal candidates were required by the collective bargaining agreement to be posted at sources widely accessible to agency employees, such as the agency intranet or other electronic medium. See 2006 IRS/NTEU National Agreement, Article 13, Section 3 (Att. 1 hereto).

27. Under the regulations creating the FCIP, agencies are not required to post FCIP vacancy announcements pursuant to internal merit promotion procedures. In practice, IRS has posted these vacancy announcements only for application by external candidates.

28. IRS employees cannot seek IRS positions filled under the FCIP pursuant to the internal merit promotion procedures contained in Article 13 of the 2006 IRS/NTEU National Agreement. These procedures provide internal candidates considerable benefits, including the requirement that internal applicants be given "first consideration" for vacancies. See NTEU/IRS Article 13, Section (1)B (Att. 1 hereto). Under that provision, while a management official may select applicants from rosters of both internal and external candidates, the official must give "first consideration" to the internal roster.

29. Further, in posting for external candidates under the FCIP, IRS is not required to use OPM's USAJOBS website. Instead, IRS has publicized these vacancies through resources less widely accessible to IRS employees nationwide, including by placing want-ads in local media and at college campus sites.

30. As a result, current IRS employees are hampered in their ability to even learn of and apply for appointment to the vacant positions under the FCIP program.

## CAUSE OF ACTION

31. OPM is required to prescribe rules which provide for the appointment of employees to the federal service through competitive examination. 5 U.S.C. § 3304. OPM may only allow for exceptions to the competitive examination requirement where "necessary" and "warrant[ed] by conditions of good administration." 5 U.S.C. § 3302.

32. OPM's regulations providing for FCIP hiring authority violate 5 U.S.C. 3302 and 3304 because they are not based on any showing by OPM that they are "necessary" or "warranted by conditions of good administration." Accordingly, their promulgation by OPM was arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law within the meaning of the Administrative Procedure Act, 5 U.S.C. § 706.

**REQUEST FOR RELIEF**

WHEREFORE, base on the foregoing, plaintiff requests judgment against the defendant:

- A. Declaring that OPM's regulations permitting agencies to use non-competitive FCIP hiring authority are arbitrary, capricious, contrary to law, null, and void;

- B. Prohibiting federal agencies from continuing to exercise any of the authority granted by such regulations;

- C. Ordering the defendant to pay a reasonable amount of plaintiff's attorney fees as determined by the Court; and

- D. Granting such other relief as the Court deems just and proper.

Respectfully submitted,

_____
GREGORY O'DUDEN
General Counsel
D.C. Bar No. 254862

_____
ELAINE KAPLAN
Senior Deputy General Counsel
D.C. Bar No. 292441

14

_____
LARRY J. ADKINS
Deputy General Counsel
D.C. Bar No. 425653

_____
TIMOTHY B. HANNAPEL
Assistant Counsel
D.C. Bar No. 418245

NATIONAL TREASURY EMPLOYEES UNION
1750 H Street, NW
Washington, DC 20006
Telephone:  (202) 572-5500
Facsimile:  (202) 572-5645

Date: __Jan. 24, 2007__    Attorneys for Plaintiffs