IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

NATIONAL TREASURY EMPLOYEES UNION )
                                  )
              Plaintiff,           )
                                  )
              v.                   )
                                  )   Civ. A. No. 07-168 (RWR)
LINDA M. SPRINGER, Director,       )
 U.S. Office of Personnel          )
 Management                        )
                                  )
              Defendant.           )

---

**PLAINTIFF'S MOTION FOR ORDER REQUIRING DEFENDANT
TO FILE ADMINISTRATIVE RECORD, AND FOR A SECOND
ENLARGEMENT OF TIME TO RESPOND TO MOTION TO DISMISS**

Plaintiff National Treasury Employees Union (NTEU) hereby respectfully requests that this Court issue an order requiring defendant to file the administrative record, and for a second enlargement of time in which to respond to defendant's motion to dismiss.  The grounds for this motion are set out in Plaintiff's Memorandum in Support of Motion for Order Requiring Defendant to File Administrative Record, and for a Second Enlargement of Time to Respond to Defendant's Motion to Dismiss, filed herewith.  Undersigned counsel has conferred with counsel for defendant, who indicated that defendant will

oppose this motion.  A proposed order is also submitted.

Respectfully submitted,


/s/ Gregory O'Duden
GREGORY O'DUDEN
General Counsel
D.C. Bar No. 254862

/s/ Elaine Kaplan
ELAINE KAPLAN
Senior Deputy General Counsel
D.C. Bar No. 292441


/s/ Larry J. Adkins
LARRY J. ADKINS
Deputy General Counsel
D.C. Bar No. 425653

/s/ Timothy B. Hannapel
TIMOTHY B. HANNAPEL
Assistant Counsel
D.C. Bar No. 412245

NATIONAL TREASURY EMPLOYEES
UNION
1750 H Street, NW
Washington, DC 20006
Telephone:  (202) 572-5500
Facsimile:  (202) 572-5645

Date: June 13, 2007          Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

NATIONAL TREASURY EMPLOYEES UNION, )
                                    )
          Plaintiff,                )
                                    )
          v.                        )
                                    )   Civ. A .No. 07-168 (RWR)
LINDA M. SPRINGER, Director,        )
 U.S. Office of Personnel           )
 Management,                        )
                                    )
          Defendant.                )
                                    )

---

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR ORDER REQUIRING DEFENDANT TO FILE
ADMINISTRATIVE RECORD, AND FOR A SECOND ENLARGEMENT
OF TIME TO RESPOND TO DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

The plaintiff, the National Treasury Employees Union (NTEU) is a federal sector labor organization that represents the interests of some 150,000 federal employees nationwide. It has brought this action under the Administrative Procedure Act, 5 U.S.C. § 706, as a facial challenge to final regulations issued by the Office of Personnel Management (OPM) on August 5, 2005. Those regulations established the "Federal Career Intern Program" (FCIP), a hiring authority that has bestowed broad discretion upon federal agencies to depart from the statutorily mandated competitive examination and selection procedures that have been the cornerstone of the merit-based federal civil

service for over 125 years.  The statutorily mandated procedures that are jettisoned under the FCIP program include, among others, requirements that vacancy announcements be posted in a centralized location available to all potential applicants, stringent rules for rating and ranking candidates, and a specific point system for awarding veterans' preference to qualified candidates.  See U.S. Merit Systems Protection Board, Building a High-Quality Workforce: The Federal Career Intern Program (2005)("MSPB Report"), at 10 (listing procedural requirements of competitive examining process that FCIP grants exemption from).

NTEU's complaint alleges that the regulations establishing the FCIP are unlawful because OPM did not articulate an adequate basis for the broad exception that the regulations make to statutorily mandated competitive procedures.  Specifically, NTEU contends, OPM did not explain or show why the exception is either "necessary" or "warranted by conditions of good administration."  5 U.S.C. § 3302; see National Treasury Employees Union v. Horner, 854 F.2d 490 (D.C. Cir. 1988)(upholding a similar challenge to another OPM special hiring authority).

Pending before the Court is OPM's Motion to Dismiss for Lack of Subject Matter Jurisdiction or, in the Alternative, for Failure to State a Claim.  OPM argues that NTEU's complaint

should be dismissed because: 1) NTEU allegedly lacks standing to pursue its claims; 2) NTEU's APA claim is precluded by Civil Service Reform Act of 1978 (CSRA); 3) NTEU may not pursue its APA claim because it did not raise its objections to the FCIP program during the comment period that preceded the promulgation of the final rule, and 4) the doctrine of laches bars this action.

As we explain more fully below, the latter two bases for OPM's motion (laches and waiver of claims resulting from the failure to comment on the interim rule) cannot be resolved without consideration of the administrative record.  For that reason, and in the interest of resolving OPM's entire motion to dismiss at once, NTEU requests that the Court direct the government to file the administrative record, and enlarge the time for the Union to file its response to OPM's motion to dismiss until 30 days after the record is filed.[1]

---

[1]   On April 10, 2007, NTEU sent OPM a Request for Production of Documents, pursuant to Fed. R. Civ. P. 34, seeking the administrative record.  See Ex. 1 hereto (letter from Hannapel to Katerberg enclosing document request).  The government objected to that request in its entirety on the grounds that discovery is not allowed in APA actions and that, in any event, the request is premature due to the government's Motion to Dismiss.  See Ex. 2 hereto (Defendant's Response to Plaintiff's Document Request, served May 10, 2007).

**ARGUMENT**

**THE UNION CANNOT RESPOND IN FULL TO THE GOVERNMENT'S MOTION TO DISMISS WITHOUT ACCESS TO THE ADMINISTRATIVE RECORD**

The OPM regulations establishing the FCIP had their genesis in Executive Order 13,162, which was issued on July 6, 2000. That Order announced a new initiative, termed an "intern" program, whose purpose was ostensibly "to attract exceptional men and women to the Federal workforce who have diverse professional experiences, academic training, and competencies, and to prepare them for careers in analyzing and implementing public programs." According to the Order, the authority granted by the program was not intended to supplant competitive hiring as a norm, but was instead to be considered "complementary" to other existing special hiring programs "that provide career enhancement opportunities for Federal employees."

In accordance with the Executive Order, and citing essentially the same justifications for the new hiring authority, OPM issued an interim rule to implement the FCIP on December 14, 2000 and made that rule immediately effective. See 65 Fed.Reg. 78,077 (Dec. 14, 2000). While NTEU and other federal sector unions routinely comment on proposed OPM regulations that will have an impact upon them or upon their

4

members[2], neither NTEU, nor any other federal sector union, nor any entity outside of the government, commented on the interim rule establishing the FCIP.  On August 2, 2005, OPM issued its final rule, which is the subject of the Union's challenge in this case.  See 70 Fed.Reg. 44,219 (Aug. 2, 2005).

The government contends that because NTEU did not comment on the interim rule, this lawsuit is barred both by the doctrine of laches and by the principle of administrative law that "'a party must initially present its comments to the agency during the rulemaking in order for the Court to consider the issue'." OPM Memorandum at 11, quoting Appalachian Power Co. v. EPA, 251 F.3d 1026, 1036 (D.C. Cir. 2001).  But the applicability of this rule is premised on the notion that the agency has provided adequate notice of a rule's intended scope.  Cf. International Union, United Mine Workers of America v. Mine Safety and Health Administration, 407 F.3d 1250, 1259-60 (D.C. Cir 2005)(citing

---

[2]    See, e.g., NTEU v. Chertoff, 452 F.3d 839 (D.C. Cir. 2006)(challenge to OPM/DHS regulations establishing new DHS personnel system, following NTEU's comments to proposed regulations (see 70 Fed.Reg. 5272, 5275 (2005)(referring to joint comments submitted by "three largest labor organizations")); NTEU v. Devine, 733 F.2d 114 (D.C. Cir. 1984)(challenge to OPM regulations modifying RIF procedures and performance management rules, following NTEU's comments on proposed regulation (see 48 Fed.Reg. 49,462 (1983)(preamble to final rule referring to comments received from "9 labor organizations"); NTEU v. Cornelius, 617 F. Supp. 365, 366-67 (D.D.C. 1985) (finding no merit in defendant OPM's contention that NTEU lacked standing where NTEU alleged substantive and procedural flaws in OPM's rulemaking).

Small Refiner Lead Phase-Down Task Force v. EPA, 705 F.2d 506, 547 (D.C. Cir. 1983))(allowing challenge to final rule that differs materially from proposed rule); Shell Oil Co. v EPA, 950 F.2d 741, 751 (D.C. Cir. 1991)(same, noting that "interested parties cannot be expected to divine the [agency's] unspoken thoughts" or intentions).  Further, as even the government recognizes, the Appalachian Power Co. rule does not apply when "another party did submit comments to the agency raising the issue in question," OPM Mem. At 13, n.6 citing Natural Resources Defense Council v. EPA, 25 F.3d 1063, 1074 (D.C. Cir. 1994).  If notice is inadequate, a party cannot be faulted for not commenting on a proposed rule.

In this case, NTEU will argue that OPM's regulation did not provide notice to the public that the FCIP was intended to be the broadly used alternative to competitive hiring that it soon became.  See MSPB Report at 11 (observing that the FCIP may soon "supplant the competitive examining process . . . as the primary means of entry to the competitive service").[3]  On the contrary, as the term "intern" suggests, the FCIP was characterized as a "complementary," special focus hiring

---

[3]  FCIP hiring increased from 423 hires for entry-level positions in FY 2001, to over 11,000 hires for such positions in FY 2005. MSPB Report, Table 1, at 11; MSPB, Issues of Merit, September 2006, at 3 (citing FY 2005 data).  At the same time, hiring for entry-level positions under competitive examining procedures decreased commensurately, from 18,158 hires in FY 2001 to 11,473 hires in FY 2004.  MSPB Report, Table 1, at 11.

authority designed to attract "exceptional" individuals, not unlike other special hiring authorities OPM has implemented to meet unique needs.  See 5 C.F.R. § 213.3202(a)(Student Educational Employment Program); 213.3102(ii)(Presidential Management Fellows Program).  The proposed regulations reinforce this impression, by incorporating a requirement that the "interns" complete a specialized training program (presumably one that is different from those all new federal employees must undergo).  See 65 Fed.Reg. at 78,077 ([t]hroughout the internship, the employee must participate in a formal training program and job assignments to develop competencies appropriate to the agency's mission and needs.").

Further, the FCIP was not introduced as a means of addressing "the projected departure of hundreds of thousands of federal employees likely to retire over the next decade" as the government claims in its brief (at 4).  Nor was there any discussion whatsoever in the Federal Register notices announcing the interim and final rules, that would explain the basis for OPM's purported conclusion that a broad based exception from competitive procedures was necessary to address the projected retirement of large numbers of federal employees over the next decade.  There were no administrative findings that such a departure was about to occur, no findings that future vacancies could not be filled through statutorily mandated procedures, and

7

no explanation how the creation of the FCIP would address the problem of filling such vacancies.

It is reasonable to believe that the administrative record in this case will shed light upon the degree to which those who did comment on the regulations understood the intended scope of the authority granted to federal agencies.  In fact, OPM noted in the preamble to the final rule, that it had "received a number of oral comments and questions from agencies asking for additional information and/or clarification."  See 70 Fed.Reg. 44,219 (2005).[4]  To the extent that these comments, or other

---

[4]  In particular, OPM reported that "a few agencies asked for more information about the types of positions appropriate for the program."  Id.  In response, OPM wrote that suitable positions would include any "entry-level position[] that require[] training and development to equip the employee with the competencies needed to successfully perform the job. Examples of such positions include:  Accounting and auditing, engineering, human resources management, information technology, law enforcement, and scientific research."  Id. (emphasis added). These examples cover the many of the most populous job series in OPM's Handbook of Occupational Groups (August 2001).  The number of current incumbents in these positions exceeds 600,000.  (See OPM's Central Personnel Data File, December 2006 (www.fedscope.opm.gov) total figure derived by adding number of incumbents in occupational series 200 (Human Resources Management), 400 (Biological Sciences), 500 (Accounting and Budget), 800 (Engineering and Architecture), 1300 (Physical Sciences), 1800 (Investigation), and 2200 (Information Technology). In other words, it was not until the final rule was promulgated (and the program was then implemented) that anyone would have understood the extent to which OPM was authorizing departures from statutory competitive procedures.

parts of the record,[5] reflect agencies' lack of understanding of the intended broad scope of the program, it would support NTEU's argument that the notice accompanying the publication of the interim rule was inadequate.  Cf. Connecticut Light & Power Co. v. Nuclear Regulatory Commission, 673 F.2d 525, 530 (D.C. Cir. 1982)(notice of proposed rulemaking should provide an accurate picture of the agency's reasoning so that interested parties may comment meaningfully); Shell Oil Co. v. EPA, 950 F.2d 741, 750-51 (D.C. Cir. 1991) (agency's "unexpressed intention" underlying proposed rule "cannot convert a final rule into a logical outgrowth that the public should have anticipated").

---

[5]  The administrative record has been defined by courts in this circuit to consist of those materials "that were compiled by the agency that were before the agency at the time the decision was made."  James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996); Common Sense Salmon Recovery v. Evans, 217 F. Supp. 2d 17, 20 (D.D.C. 2002).  More specifically, the record must include all documents that the agency "directly or indirectly considered."  Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993); Amfac Resorts, LLC v. United States DOI, 143 F. Supp. 2d 7, 12 (D.D.C. 2001); Alaska Excursion Cruises v. United States, 603 F. Supp. 541, 550 (D.D.C. 1984); see also Pers. Watercraft Indus. Ass'n v. Dep't of Commerce, 48 F.3d 540, 546 n.4 (D.C. Cir. 1995) (noting with approval that the "whole record" contained all materials "pertaining to the [challenged] regulation").  The agency may not skew the record in its favor by excluding pertinent but unfavorable information.  Envtl. Def. Fund v. Blum, 458 F. Supp. 650, 661 (D.D.C. 1978).  Nor may the agency exclude information on the grounds that it did not "rely" on the excluded information in its final decision.  Ad Hoc Metals Coalition v. Whitman, 227 F. Supp. 2d 134, 139 (D.D.C. 2002); Amfac Resorts, 143 F. Supp. 2d at 12.

The administrative record will also reveal whether any other party raised the issue of the consistency of the regulations with statutory competitive hiring requirements or the issue of the need for such an exception. In fact, in arguing that NTEU's complaint should be dismissed, OPM itself has relied upon representations that "no other party submitted comments to OPM reflecting the issues presently raised by NTEU"; that "[n]o commenter questioned the underlying need or justification for the FCIP," and that none of the "commenters challenge[d] placement of the FCIP in the excepted service." OPM Mem. At 8. NTEU is certainly entitled to take its own look at the administrative record to check the accuracy of these representations. See Am. Bioscience, Inc. v. Thompson, 243 F.3d 579, 582 (D.C. Cir. 2001)(district court erred by relying on parties' representations to discern the basis on which FDA acted; proper course would have been to call for the administrative record).[6]

---

[6]    In fact, by relying upon materials outside of the pleadings in support of its motion to dismiss, the government has effectively converted its motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. See Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226, n. 5 (D.C. Cir. 1993)(if court must consider administrative record or other materials outside of the pleadings in deciding 12(b)(6) motion to dismiss "it is probably the better practice for a district court to convert to summary judgment"); Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156 (D.C. Cir. 2003) (district court erred in not converting 12(b)(6) motion into a motion for summary judgment when reviewing the administrative

Indeed, it bears noting that in every case OPM cites in which a court has found that a party waived its right to bring an APA action by failing to comment, the courts had before them the entire administrative record. That is no mere coincidence; for the reasons described above, it is impossible for a court to rule conclusively on this issue (or the government's related laches argument) without considering the record.

In short, the Court should not require NTEU to respond, nor should it rule on the government's motion to dismiss, until the government files the administrative record. Once the government does so, the Union anticipates that it will be able to file both a response to the government's motion to dismiss in its entirety, and its own motion for summary judgment. This process will reduce the number of pleadings that the Court will be required to consider, avoid piecemeal litigation, and provide a context for the Court's resolution of the jurisdictional arguments made by the government.

---

record); IMS v. Alvarez, 129 F.3d 618, 619, n.1 (D.C. Cir. 1997)(where "district court clearly relied on materials outside the pleadings in ruling on the motion to dismiss," court of appeals treated the court's action as a grant of summary judgment). The court cannot resolve that motion without considering the administrative record for itself. See Am. Bioscience, Inc. v. Thompson, 243 F.3d at 582.

**CONCLUSION**

For the foregoing reasons, NTEU requests that the Court order OPM to file the administrative record with the Court. We also request that the Court grant an additional enlargement of time for NTEU to respond to OPM's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the Alternative, for Failure to State a Claim, until 30 days after OPM has filed the administrative record. At that time, the Union will respond to the Motion to Dismiss and also file its own motion for summary judgment.

Respectfully submitted,

/s/ Gregory O'Duden
GREGORY O'DUDEN
General Counsel
D.C. Bar No. 254862

/s/ Elaine Kaplan
ELAINE KAPLAN
Senior Deputy General Counsel
D.C. Bar No. 292441

/s/ Larry J. Adkins
LARRY J. ADKINS
Deputy General Counsel
D.C. Bar No. 425653

/s/ Timothy B. Hannapel
TIMOTHY B. HANNAPEL
Assistant Counsel
D.C. Bar No. 412245

12

```
                              NATIONAL TREASURY EMPLOYEES UNION
                              1750 H Street, NW
                              Washington, DC 20006
                              Telephone:  (202) 572-5500
                              Facsimile:  (202) 572-5645

Date: June 13, 2007          Attorneys for Plaintiffs
```

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
NATIONAL TREASURY EMPLOYEES UNION  )
                                   )
          Plaintiff,               )
                                   )
          v.                       )
                                   )  Civ. A. No. 07-168 (RWR)
LINDA M. SPRINGER, Director,       )
 U.S. Office of Personnel          )
 Management,                       )
                                   )
          Defendant.               )
_____)
```

**[PROPOSED] ORDER**

Upon consideration of Plaintiff's Motion for Order Requiring Defendant to File Administrative Record, and for a Second Enlargement of Time to Respond to Defendant's Motion to Dismiss, it is hereby

ORDERED, that Plaintiff's motion is GRANTED.  Defendant shall file the administrative record with the Clerk of the Court as expeditiously as possible, and shall notify Plaintiff's counsel of such filing.  Plaintiff shall respond to Defendant's motion to dismiss within 30 days of the filing of the administrative record.

It is so ORDERED.

Dated: _____, 2007            _____
                                RICHARD W. ROBERTS
                                U.S. District Judge



FILE COPY

April 10, 2007

**VIA FACSIMILE**
Robert J. Katerberg
U.S. Dept. of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Room 6112
Washington, D.C. 20001
Fax number: (202) 616-8460

Re: NTEU v. Springer (Civ. No. 07-168)--Request
for Administrative Record

Dear Mr. Katerberg:

I have enclosed for service NTEU's document request to OPM, made pursuant to Fed. R. Civ. P. 34. This request seeks production of the administrative record underlying OPM's creation of the Federal Career Intern Program (FCIP), by interim regulation published on December 14, 2000, see 65 Fed.Reg. 78,077 (Dec. 14, 2000), and its final FCIP rule, published on August 2, 2005. See 70 Fed. Reg. 44,219 (Aug. 2, 2005); 5 C.F.R. § 213.3202(o).

In drafting the definition of "administrative record" in the attached request, I relied heavily on the "Guidance to Federal Agencies on Compiling the Administrative Record," issued in January 1999 by DOJ's Environmental and Natural Resources Division (available publicly at http://www.fws.gov/policy/library/m0063.html). Applying these principles to OPM's interim and final FCIP rules, for example, we believe that information concerning agencies' actual use of the interim FCIP authority during the 4-1/2 year period prior to the issuance of the final rule is properly included in the administrative record. Specifically, we would expect that OPM's "reviews of the FCIP in connection with its on-going program management evaluation of individual agencies' human resource management practices and compliance with law and

regulations," which were criticized as inadequate by the MSPB in its comprehensive 2005 report on the FCIP,[1] gave OPM ample opportunity to learn how agencies were using (and in many cases, abusing) FCIP authority. These individual agency reviews, to the extent they focus at all on actual FCIP implementation, should be included as part of the administrative record that was available to OPM in arriving at its final FCIP rule.

I look forward to receiving your response to this document request. Of course, in the meantime, if questions arise, please don't hesitate to give me a call.

Sincerely,

Timothy B. Hannapel
Assistant Counsel

Encl.

---

[1]    See "Building a High-Quality Workforce—the Federal Career Intern Program," at 6 (MSPB, Sept. 2005).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. A. No. 07-168 (RWR) |
| ) | |
| LINDA M. SPRINGER, Director ) | |
| U.S. Office of Personnel ) | |
| Management ) | |
| ) | |
| Defendant. ) | |
| ) | |

## PLAINTIFF'S DOCUMENT REQUEST
## TO THE U.S. OFFICE OF PERSONNEL MANAGEMENT

Pursuant to Fed. R. Civ. P. 34, plaintiff National Treasury Employees Union (NTEU) hereby submits the following request for production of documents to Defendant Springer and the U.S. Office of Personnel Management (OPM).

### INSTRUCTIONS

1.    As provided in Fed. R. Civ. P. 34(b), defendant must serve a written response within 30 days of service of this document request.

2.    If defendant contends that any of the information sought by this document request is privileged or otherwise protected from discovery in whole or in part, please supply sufficient factual detail to enable plaintiff and/or the Court to determine whether or not such information or document is entitled to a claim of privilege, including where applicable:

(a) the title of the document; (b) the date or dates of the document; (c) the name, position, and address of each person who participated in the communication or the preparation of the document; (d) the name, position, and address of each person to whom the document was addressed; (e) the name, position, and address of each person, other than the addressee, to whom the document or the contents thereof have been communicated by copy, exhibition, reading, or oral conversation of any kind; (f) the general subject matter of the document or information; and (g) the basis or bases for the claim of privilege.

3.    If defendant believes that any information responsive to this document request at one time existed but now has been lost or destroyed, any documents evidencing such information must be identified, including any that have been lost or destroyed (by source, date of creation or acquisition, and subject matter) and defendant must indicate its belief about the date of and reason for the loss of the information.

4.    If defendant discovers further information responsive to this document request after submitting its response, defendant must supplement its responses to the full extent required by the Federal Rules of Civil Procedure.

5.    The written response to this document request, including any objections, must be signed by the attorney

submitting that response, and shall constitute a certification to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, to the matters specified in Fed. R. Civ. P. 26(g)(2).

## DEFINITIONS

1.    "Agency" means the U.S. Office of Personnel Management, and all OPM offices nationwide, including all field offices, all program components, and all non-program units, such as congressional and correspondence components.

2.    "Document" means the complete original or a true, correct, and complete copy and any non-identical copies (whether different from the original due to notes made on or attached to the copy or otherwise) of any written, graphic, typed, printed, filmed, recorded, or electronic information no matter how produced, recorded, stored, or reproduced (including computer stored or generated data, together with instructions or programs necessary to search and retrieve such data), including but not limited to any writing, letter, telegram, memorandum, electronic mail or message, statement, book, report, study, analysis, digest, record, handwritten note, working paper, chart, graph, drawing, photograph, videotape, audio recording (including telephone voicemail or answering machine messages), diary, tabulation, data sheet,

note of interview or communication, or any other data
compilation in the possession, custody, or control of OPM,
including all drafts of such documents. As to any document or
data stored in electronic form, the person or entity
responding to the request should also furnish the information
in written or printed form.

3.   "Administrative record" means all documents and
materials prepared, reviewed, or received by agency personnel,
that were considered directly or indirectly by the agency in
promulgating the regulations that are at issue in this matter.
It is not limited to documents and materials relevant only to
the merits of the agency's decision to promulgate those
regulations, but also includes documents and materials
relevant to the process the agency utilized in making that
decision. It also includes all documents and materials which
were before, or available to, the decision-making office at
the time the regulations were issued, whether or not they were
specifically considered by the final agency decision-maker,
and regardless of whether they support or do not support the
final agency decision. Such documents and materials include
policies, guidelines, directives, articles, books, factual
information, communications the agency received from other
agencies, any responses to those communications, technical
information, sampling results, survey information,

4

investigative or audit reports or studies, decision documents, minutes of meetings or transcripts thereof, and memorializations of telephone conversations and meetings.

4.    The conjunctive term "and" and the disjunctive term "or" shall be interpreted in every instance as meaning "and/or," i.e. both "and" and "or," and shall not be interpreted to exclude any information otherwise within the scope of these requests.

5.    A document "relating to" a given subject matter means a document that relates to, constitutes, embodies, comprises, reflects, identifies, states, refers to, deals with, comments on, responds to, describes, analyzes, contains information concerning, or is any way pertinent to, that subject matter.

## DOCUMENT REQUEST

Produce all documents that comprise the administrative record relating to the agency's interim rule to implement the Federal Career Intern Program (FCIP), published on December 14, 2000, see 65 Fed.Reg. 78,077 (Dec. 14, 2000), and its

final FCIP rule, published on August 2, 2005.  <u>See</u> 70 Fed.

Reg. 44,219 (Aug. 2, 2005); 5 C.F.R. § 213.3202(o).


                        Respectfully submitted,

                        GREGORY O. DUDEN
                        General Counsel

                        ELAINE KAPLAN
                        Senior Deputy General Counsel

                        TIMOTHY B. HANNAPEL
                        Assistant Counsel

                        NATIONAL TREASURY EMPLOYEES UNION
                        1750 H Street, N.W.
                        Washington, D.C. 20006
                        (202) 572-5500
                        (202) 572-5645 (fax)

                        Attorneys for Plaintiff


Date:  April 10, 2007

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Plaintiff's

Document Requests to the Office of Personnel Management were

sent this day by facsimile to the following:

> Robert J. Katerberg
> U.S. Department of Justice
> Civil Division, Federal Programs Branch
> 20 Massachusetts Avenue, N.W.
> Room 6112
> Washington, D.C.  20001
> Fax number: (202) 616-8460

_4-10-07_
Date

_Myra Bernard_
Myra Bernard

7

**FILE COPY**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civ. A. No. 07-168 (RWR) ) |
| LINDA M. SPRINGER, Director, U.S. Office of Personnel Management, | ) ) ) |
| Defendant. | ) |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S DOCUMENT REQUEST

Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, defendant hereby responds to Plaintiff's Document Request to the U.S. Office of Personnel Management, served April 10, 2007. Defendant objects to plaintiff's document request in its entirety on the ground that it is both procedurally inappropriate and, in any event, premature.

1.    The document request is procedurally inappropriate because discovery requests are not a proper vehicle for disclosure of the administrative record. In a proceeding to review agency action under the Administrative Procedure Act, the defendant files and serves the administrative record in the ordinary course, at the appropriate time (generally, when the defendant answers or files a dispositive motion on the merits). Indeed, discovery is generally not allowed at all in a proceeding to review agency action on the administrative record. Moreover, it is improper for plaintiff to use discovery requests to seek to impose requirements with respect to the administrative record that are different than or additional to those required by law. In this regard, defendant objects to the Instructions and Definitions in plaintiff's document request to the extent they are inconsistent with applicable law regarding the contents of and the procedures for

filing the administrative record.

2.    In any event, even if discovery requests could be deemed a proper vehicle for

disclosure of the administrative record, the current request would be premature. Plaintiff served

its request at a time even before defendant's time to answer or otherwise respond to the

complaint had run. At the time of this response, defendant has pending a dispositive motion to

dismiss the complaint on preliminary procedural and jurisdictional grounds. Moreover, Federal

Rule of Civil Procedure 34(b) provides that "[w]ithout leave of court or written stipulation, a

request may not be served before the time specified in Rule 26(d)," i.e., before the parties have

conferred as required by Federal Rule of Civil Procedure 26(f). A Rule 26(f) conference has not

occurred, nor has plaintiff obtained leave of court or a written stipulation.

Dated: May 10, 2007                        Respectfully submitted,

Of Counsel:                                PETER D. KEISLER
                                           Assistant Attorney General

KERRY B. McTIGUE                           JEFFREY A. TAYLOR
General Counsel                            United States Attorney

KATHIE A. WHIPPLE                          SUSAN K. RUDY
STEVEN E. ABOW                             Assistant Director
RISA B. CHERRY
Office of the General Counsel
U.S. Office of Personnel Management        ROBERT J. KATERBERG
1900 E Street NW                            (D.C. Bar No. 466325)
Washington, D.C. 20415                     Trial Attorney
(202) 606-1700                             U.S. Department of Justice
                                           Civil Division, Federal Programs Branch
                                           20 Massachusetts Avenue, N.W., Room 6112
                                           Washington, D.C. 20001
                                           Telephone:    (202) 616-8298
                                           Facsimile:    (202) 616-8460
                                           Robert.Katerberg@usdoj.gov
                                           Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 10, 2007, a copy of the foregoing Defendant's Response to

Plaintiff's Document Request to the U.S. Office of Personnel Management was served by

facsimile upon:

> Timothy B. Hannapel, Esq.
> National Treasury Employees Union
> 1750 H Street, N.W.
> Washington, D.C. 20006
> Facsimile: (202) 572-5645

ROBERT J. KATERBERG
   (D.C. Bar No. 466325)
   Trial Attorney
   U.S. Department of Justice
   Civil Division, Federal Programs Branch
   20 Massachusetts Avenue, N.W., Rm 6112
   Washington, D.C. 20001
   Telephone:    (202) 616-8298
   Facsimile:    (202) 616-8460
   Robert.Katerberg@usdoj.gov