IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LINDA M. SPRINGER, Director, ) <br> U.S. Office of Personnel Management, ) <br> ) <br> Defendant. ) | Civ. A. No. 07-168 (RWR) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR ORDER REQUIRING DEFENDANT TO FILE ADMINISTRATIVE RECORD AND FOR SECOND ENLARGEMENT OF TIME TO RESPOND TO MOTION TO DISMISS**

Defendant Linda M. Springer, Director, U.S. Office of Personnel Management ("OPM"), hereby opposes plaintiff National Treasury Employees Union's ("NTEU") Motion for Order Requiring Defendant to File Administrative Record, and for a Second Enlargement of Time to Respond to Motion to Dismiss (dkt. no. 6). Fundamental principles of jurisprudence mandate that the jurisdictional and other threshold issues raised in defendant's pending motion to dismiss be addressed and resolved before requiring filing of the administrative record and entertaining merits briefing as plaintiff proposes. Further, plaintiff's contention that it needs the administrative record in order to respond to defendant's jurisdictional and other threshold arguments does not withstand scrutiny. Plaintiff demanded the administrative record before defendant's motion was even filed, and before plaintiff knew or could possibly have known what arguments would be made in that motion. This timing, as well as the sheer implausibility of its arguments that the administrative record will enable it to rebut defendant's jurisdictional and other threshold arguments, shows that for NTEU, getting the administrative record early is a

result in search of a rationale. NTEU's motion should be denied and it should be required to respond to defendant's pending motion to dismiss forthwith.

I.  **THE COURT SHOULD DECIDE THE JURISDICTIONAL AND OTHER THRESHOLD ISSUES IN DEFENDANT'S MOTION TO DISMISS BEFORE ADDRESSING THE MERITS AND REQUIRING THE FILING OF THE ADMINISTRATIVE RECORD**

Defendant filed a motion to dismiss that raises four independent threshold issues, two of which (standing and Civil Service Reform Act preclusion) go to the Court's very subject matter jurisdiction over this case. The Supreme Court has held that "[w]ithout jurisdiction the court cannot proceed at all in any cause. Jurisdiction is the power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998) (internal quotation marks omitted). "Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of the case. . . ." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).

The other two issues raised in defendant's motion to dismiss -- issue waiver and laches -- are not jurisdictional per se, but are similar to jurisdictional arguments in that they are "threshold grounds for denying audience to a case on the merits," Ruhrgas, 526 U.S. at 585, and "do[] not entail any assumption by the court of substantive law-declaring power," Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 127 S. Ct. 1184, 1192-93 (2007) (internal quotation marks omitted). Accordingly, they should be considered together with jurisdiction and may even be decided antecedent to jurisdiction. See id. at 1192-93 (holding that district court could properly dismiss on the non-jurisdictional ground of forum non conveniens without first addressing more

difficult jurisdictional arguments).

In light of these principles and given the present posture of this litigation, there is no reason to require immediate filing of the administrative record, or to entertain the summary judgment motion that NTEU wishes to file upon receiving the administrative record. The usual practice in Administrative Procedure Act ("APA") cases in federal district court is to file the administrative record concurrently with the answer or dispositive motion on the merits, whichever comes first. Defendant's pending motion, however, does not address the merits. Rather, it raises multiple threshold legal challenges to the adequacy of plaintiff's complaint: that plaintiff lacks standing, that its claims are precluded by the exclusive remedial scheme of the Civil Service Reform Act, that it waived its ability to file an APA challenge because it failed to participate in the rulemaking below, and that its claims are barred by the equitable doctrine of laches because of its unreasonable delay. A decision in defendant's favor on any one of these dispositive threshold issues will terminate this litigation and obviate any need to reach the merits. In such circumstances, the proper course is to decide the "first and fundamental" issues, Steel Co., 523 U.S. at 94, raised by defendant's pending motion to dismiss prior to delving into the merits of the case or requiring filing of the administrative record.[1]

---

[1] By analogy, courts often stay discovery while jurisdictional and other threshold issues are pending because it is well-recognized that "[a] stay of discovery pending the determination of a dispositive motion 'is an eminently logical means to prevent wasting time and effort of all concerned, and to make the most efficient use of judicial resources.'" Chavous v. District of Columbia Financial Responsibility and Management Assistance Auth., 201 F.R.D. 1, 2 (D.D.C. 2001) (quoting Coastal States Gas Corp. v. Dept. of Energy, 84 F.R.D. 278, 282 (D. Del. 1979)); see also Petrus v. Bowen, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined"). The same considerations favor waiting until after preliminary issues are resolved to file the administrative record.

## II. NTEU DOES NOT NEED THE ADMINISTRATIVE RECORD TO RESPOND TO THE PENDING MOTION TO DISMISS

NTEU asserts that two of the grounds asserted in defendant's motion to dismiss "cannot be resolved without consideration of the administrative record." Pl's Mem. in Supp. of Mot. for Order Requiring Def. to File Admin. Record, and for a Second Enlargement of Time to Respond to Def.'s Mot. to Dismiss (hereinafter "Pl's Mem.") at 3.[2] This contention is specious and appears merely to be a stratagem designed to enable NTEU to move immediately for summary judgment and thereby attempt to litigate the merits simultaneously with the pending motion to dismiss. See Pl's Mem. at 9 (noting intent to move for summary judgment once in possession of administrative record). Indeed, NTEU sought immediate production of the administrative record several weeks before defendant filed its May 2, 2007, motion to dismiss, and before NTEU could have known what arguments would be made therein. See Pl's Mem. Ex. 1 (showing that NTEU served its request for the administrative record on April 10, 2007).

At the outset, it should be noted that while NTEU asserts that the administrative record is necessary to resolve two of the four issues raised in defendant's motion to dismiss, the substance of its arguments for that proposition relates, at most, to only one of the four -- issue waiver. In asserting that two of the issues require review of the administrative record, NTEU lumps together defendant's laches argument with issue waiver. However, NTEU makes no independent argument concerning laches, and none of the cases it cites involved laches.[3]

---

[2] NTEU does not dispute that defendant's jurisdictional standing and Civil Service Reform Act preclusion arguments can be fully and fairly resolved without consideration of the administrative record. See Pl's Mem. at 3.

[3] Laches, an equitable defense of general application, will bar a claim if "it is shown that
(continued...)

But even NTEU's argument that it needs the administrative record to explain why it did not waive its claims by failing to comment on the Federal Career Intern Program ("FCIP") rule cannot withstand scrutiny.  NTEU concedes that notwithstanding its normal practice of "routinely" commenting on proposed rules in the federal personnel area, it simply failed to comment on OPM's December 2000 interim FCIP rule.  Pl's Mem. at 4-5 & n.2.  However, NTEU expresses an intent to argue that its failure to comment should be excused on the ground that the interim rule did not give it sufficient notice of the "intended broad scope of the program."  Pl's Mem. at 5-9.

The cases that NTEU cites (Pl's Mem. at 5-6) address whether a final rule, as adopted, is a "logical outgrowth" of the proposed or interim rule that was put out for comment.  See, e.g., Small Ref. Lead Phase-Down Task Force v. U.S. E.P.A., 705 F.2d 506, 547 (D.C. Cir. 1983); see also Long Island Care at Home, Ltd. v. Coke, --- S. Ct. ---, 2007 WL 1661472, *11 (U.S. June 11, 2007) ("The Courts of Appeals have generally interpreted [the APA's comment notice requirement] to mean that the final rule the agency adopts must be a 'logical outgrowth' of the rule proposed.").  NTEU, however, plainly cannot rely on this line of authority because in this case, the interim FCIP rule and the final rule were identical in all relevant respects.  In its

---

[3](...continued)
the party raising the defense was prejudiced by the other party's delay in raising the claim and that the delay was unreasonable."  Burke v. Aetna Life Ins. Co., 56 F.3d 1509, 1514 (D.C. Cir. 1995); see also Independent Bankers Ass'n v. Heimann, 627 F.2d 486, 488 (D.C. Cir. 1980) ("[e]quity will not protect a party that through years of silence has created an impression of acquiescence").  In its motion, NTEU invokes nuances associated with the administrative-law rule that parties must initially present their comments to the agency during a rulemaking in order for courts later to consider the issue.  But even if the administrative record was necessary to consider these nuances -- which, for reasons discussed herein, it is not -- it would still be unnecessary for resolution of the laches defense, which rests on general equitable principles and transcends the administrative law context.

Complaint, NTEU stressed the broad scope of the <u>interim</u> rule.  <u>See</u> Compl. ¶ 11 (noting that under the interim rule the FCIP hiring authority was "applicable to 'the entire executive civil service'").  It also conceded that the final rule "adopted most aspects of the interim rule, with minor changes."  Compl. ¶ 12.[4]

Implicitly recognizing that the sameness between the interim and final FCIP rules prevents it from relying on the "logical outgrowth" doctrine as the courts have actually formulated it, NTEU seems to advocate a novel, but unsupported, variation on that doctrine.  Under NTEU's approach, rather than compare the text of the interim rule with the text of the final rule, the Court would compare the text of the interim rule with the way agencies have applied both the interim and final rule in practice.  <u>See</u> Pl's Mem. at 6-7 & n.3.  NTEU's peculiar twist on the "logical outgrowth" doctrine also calls for an inquiry into whether the interim rule adequately reflected OPM's "inten[t]" about how the FCIP would be used.  <u>See id.</u> at 6, 8.  What NTEU overlooks, however, is that the "intent" of an agency promulgating a rule is embodied in the text of the regulation and its issuing release.  Whether or not NTEU anticipated how federal agencies would use the FCIP hiring authority is irrelevant to whether OPM provided adequate notice of the FCIP rule.  Indeed, NTEU has not offered any authority supporting the open-ended "as applied" analysis it advocates in order to determine whether a final rule is a logical outgrowth of an interim or proposed rule.  Rather, the cases addressing the logical outgrowth test employ a

---

[4] In the cases cited by NTEU, by contrast, the final rule <u>differed</u> from the proposed rule in a way material to the challenge.  <u>See</u>, e.g., <u>Int'l Union, United Mine Workers v. Mine Safety & Health Admin.</u>, 407 F.3d 1250, 1259-60 (D.C. Cir. 2005) (holding that a mine safety rule setting a <u>maximum</u> air velocity of 500 feet per minute in mine shafts was not the "logical outgrowth" of a proposed rule setting a <u>minimum</u> air velocity of 300 feet per minute in mine shafts, and therefore industry petitioners did not have adequate notice).

discrete and focused comparison between the text of the proposed or interim rule and the text of the final rule. See, e.g., United Mine Workers, 407 F.3d 1259-60 (final rule imposed maximum air velocity for the first time); Small Refiner, 705 F.2d at 547-49 (final rule contained additional, new requirements to qualify for "small refinery" exemption).[5]

It is inconceivable that the actual "logical outgrowth" test reflected in the case law can assist NTEU in excusing its failure to comment. However, the Court need not resolve that issue on this motion. What is dispositive of the instant motion is that NTEU does not, in any event, need the administrative record to litigate the "logical outgrowth" issue. The issue depends on two publicly accessible documents that are already in NTEU's possession: the interim rule release and the final rule release, both of which were published in the Federal Register. Thus, NTEU currently has everything it needs to compare the two versions and explain what part of the "final rule deviates too sharply from the proposal." Small Refiner, 705 F.2d at 547.

NTEU speculates that "[i]t is reasonable to believe that the administrative record in this case will shed light upon the degree to which those who did comment on the regulations understood the intended scope of the authority granted to federal agencies." Pl's Mem. at 8. In particular, NTEU surmises, if such comments "reflect agencies' lack of understanding of the intended broad scope of the program, it would support NTEU's argument that the notice

---

[5] If a party believes that a rule that was adequately noticed on its face is nevertheless being misused or abused in a manner that could not reasonably have been anticipated, there may be remedies available for that situation. See, e.g., 5 U.S.C. § 553(e) (generally conferring "right to petition [agency] for issuance, amendment, or repeal of a rule"); 5 U.S.C. § 1214 (providing Special Counsel review of allegations of prohibited personnel practices); 5 U.S.C. § 1204(f) (providing MSPB review of allegations that an OPM regulation has been "invalidly implemented by any agency"). But shoehorning such a claim into an ill-fitting theory that the final rule somehow was not the logical outgrowth of a nearly identical proposed rule is not one of those remedies.

accompanying the publication of the interim rule was inadequate." Id. at 9.  This conjecture is far too thin a reed upon which to base a premature and out-of-sequence request for the administrative record.  As discussed above, the "logical outgrowth" question turns on an actual comparison of the interim and final rules, not on what inferences could potentially be made about other commenters' "understanding" or lack thereof.  After all, to the extent that anyone's understanding would shed light on why NTEU failed to comment on the interim rule, it would be NTEU's own understanding, which NTEU is readily capable of explaining without resort to the comments of other parties.  In any event, to the extent that the substance of the comments OPM received from third parties is at all relevant, the final rule release published in the Federal Register surveys those comments in great detail.  See 70 Fed. Reg. 44,219-20.  The Federal Register final rule release is entitled to a presumption of regularity, see Natural Resources Defense Council, Inc. v. U.S. EPA, 822 F.2d 104, 111 (D.C. Cir. 1987), and NTEU does not offer any basis to refute this presumption or to suggest that somehow the release's discussion of comments cannot be trusted.  NTEU can sufficiently glean from those descriptions any support it believes exists for its argument about inferences that might be drawn from the nature of the comments.

      NTEU's alternative argument that it needs the administrative record in order to determine "whether any other party raised the issue of the consistency of the regulations with statutory competitive hiring requirements or the issue of the need for such an exception" (Pl's Mem. at 11) is without merit for the same reasons:  The Federal Register release describes and responds to the comments OPM received, all of which were from federal agencies interested in using the FCIP hiring authority, and none of which were from federal sector unions like NTEU.  The release

makes clear that none of the received comments included a facial challenge to the very existence of the FCIP like the one NTEU pursues here.[6]  American Bioscience, Inc. v. Thompson, 243 F.3d 579 (D.C. Cir. 2001), cited by plaintiffs, is not to the contrary.  That case did not involve a rulemaking and did not involve any issue of waiver.  Rather, the Court of Appeals in American Bioscience held that the administrative record was necessary to assess the plaintiff's "probability of success on the merits" on its motion for a preliminary injunction challenging an "informal adjudication" by FDA.  Id. at 582.  Here, in contrast, NTEU's "probability of success on the merits" of its challenge to the FCIP rule simply does not factor into any of the jurisdictional and other threshold issues raised by defendant.[7]

NTEU points out that "in every case OPM cites in which a court has found that a party waived its right to bring an APA action by failing to comment, the courts had before them the entire administrative record."  Pl's Mem. at 11.  However, NTEU overlooks that holdings that a party has waived issues by failing to comment are typically contained in omnibus opinions that

---

[6] Contrary to NTEU's statement, Pl's Mem. at 10 n.6, defendant did not convert its motion to dismiss into a motion for summary judgment by relying on materials outside the pleadings.  As one of the very cases plaintiff cites recognizes, "as matters of public record, statements in the Federal Register can be examined on 12(b)(6) review."  Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

[7] NTEU's arguments, even if credited, would not support production of the entire administrative record as NTEU has defined it.  See Pl's Mem. Ex. 1 (purported discovery request containing definition of administrative record); see also Pl's Mem. at 9 n.5 (discussing appropriate contents of administrative record).  Rather, both of NTEU's expressed rationales for why it needs the administrative record would call at most for review of the comments OPM received on the interim FCIP rule.  In any case, it should be noted that OPM has objected to NTEU's definition of the administrative record on the grounds that it is inconsistent with applicable law.  See Pl's Mem. Ex. 2.  While the scope of the administrative record is not an issue that the Court needs to decide at present, defendant wishes to make clear that it does not acquiesce in NTEU's definition of the administrative record.

address a variety of issues associated with a given rulemaking, some of which issues <u>were</u> duly preserved for judicial review, making the administrative record necessary for resolution of <u>those</u> issues on the merits. <u>See</u>, <u>e.g.</u>, <u>Honeywell Int'l, Inc. v. EPA</u>, 372 F.3d 441 (D.C. Cir. 2004) (addressing issues raised by one group of petitioners on the merits, but concluding that challenge by other petitioner was waived) .[8] The presence of the administrative record in such cases says nothing about whether it is necessary here, where NTEU is the only plaintiff, failed to comment on the interim rule at all, and presently raises one issue, which is subject to several jurisdictional and other threshold issues that are the only legal issues presently before the Court.

Given that NTEU's theory of need for the administrative record is so makeweight, and that its demand for the administrative record predated the circumstances that allegedly created its need, it is difficult to escape the conclusion that its true interest lies simply in accelerating merits briefing. NTEU's preferred litigation strategy, however, does not justify overriding the principles set forth in <u>Steel Co.</u> and its progeny, the usual sequence of procedure both in APA cases and under the Federal Rules of Civil Procedure, and considerations of judicial economy. It is puzzling that NTEU appeals to judicial economy as favoring its proposed approach. <u>See</u> Pl's Mem. at 11 (stating that its approach "will reduce the number of pleadings that the Court will be required to consider"). After all, it is NTEU who, by filing the instant motion, has already triggered a new, collateral round of briefing, and who proposes to multiply the number of briefs

---

[8] Also, many of the cases in which this principle has been applied have been court-of-appeals direct review cases, where the administrative record is filed as a matter of course within 40 days after service of the petition for review, <u>see</u> Fed. R. App. P. 17(a). The Federal Rules of Civil Procedure do not contain any analogous requirement; to the contrary, a timely motion to dismiss under Fed. R. Civ. P. 12(b) stays the obligation to answer until after the motion to dismiss is decided.

even further by entering into immediate summary judgment briefing of the merits. Judicial economy is obviously better served by taking things one step at a time, beginning with the threshold issues that, <u>inter alia</u>, determine the Court's jurisdiction over the case. If defendant prevails on any of the four arguments in its motion to dismiss, the Court will not need to entertain <u>any</u> further briefs in this case. Thus, NTEU's motion should be denied and it should be required to respond to defendant's pending motion to dismiss forthwith.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that plaintiff's Motion for Order Requiring Defendant to File Administrative Record, and for a Second Enlargement of Time to Respond to Motion to Dismiss be denied.

Dated: June 27, 2007                                         Respectfully submitted,


Of Counsel:                                                  PETER D. KEISLER
                                                             Assistant Attorney General
KERRY B. McTIGUE
General Counsel                                              JEFFREY A. TAYLOR
                                                             United States Attorney
KATHIE A. WHIPPLE
STEVEN E. ABOW                                               SUSAN K. RUDY
RISA B. CHERRY                                               Assistant Director
Office of the General Counsel
U.S. Office of Personnel Management        /s/ Robert J. Katerberg
1900 E Street NW                                             ROBERT J. KATERBERG
Washington, D.C. 20415                                       (D.C. Bar No. 466325)
(202) 606-1700                                               U.S. Department of Justice
                                                             Civil Division, Federal Programs Branch
                                                             20 Massachusetts Avenue, N.W., Room 6112
                                                             Washington, D.C. 20001
                                                             Telephone:   (202) 616-8298
                                                             Facsimile:   (202) 616-8460
                                                             Robert.Katerberg@usdoj.gov
                                                             Attorneys for Defendant