```
             IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA
```

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, )<br>                                   )<br>        Plaintiff,                 )<br>                                   )<br>             v.                   )<br>                                   )  Civ. A .No. 07-168<br> LINDA M. SPRINGER, Director,      )        (RWR)<br>  U.S. Office of Personnel         )<br>  Management,                      )<br>                                   )<br>        Defendant.                 )<br>                                   ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION FOR ORDER REQUIRING DEFENDANT TO FILE ADMINISTRATIVE RECORD, AND FOR A SECOND ENLARGEMENT OF TIME**

This case arises out of a complaint that the National Treasury Employees Union (NTEU) filed under the Administrative Procedure Act to challenge final regulations issued by the Office of Personnel Management (OPM). Those regulations created the "Federal Career Intern Program" (FCIP). Under that program, federal agencies have been granted unprecedented discretion to depart from statutorily-mandated competitive examination and selection procedures when hiring applicants for federal jobs.

The use of FCIP hiring has expanded tremendously over the last several years. In some instances, the program has become the primary, if not exclusive, means of hiring

applicants for positions in NTEU bargaining units.[1]  The growing use of the FCIP program in lieu of competitive hiring procedures, and the resulting injury to ever-increasing numbers of NTEU members, prompted NTEU to file this suit.[2]

OPM filed a Motion to Dismiss the complaint on May 2, 2007.  On June 13, NTEU filed a motion requesting that the Court compel OPM to file the administrative record and that it enlarge NTEU's time to respond to the motion to dismiss until 30 days after the record is filed.

OPM has now filed an opposition to NTEU's motion.  As we show below, the legal arguments in OPM's opposition are meritless.  The Union needs access to the administrative record now in order to respond in full to the government's motion because the contents of the record are likely to contain information relevant to two of the grounds for dismissal urged in OPM's Motion to Dismiss.

---

[1] NTEU is the exclusive bargaining representative of some 17,000 Customs and Border Protection Officers (CBPO) at the Department of Homeland Security (DHS).  DHS now hires all new CBPOs through the FCIP program.

[2] NTEU is the exclusive representative of approximately 97,000 employees of the Internal Revenue Service (IRS) including thousands of Revenue Agents and Revenue Officers.  IRS began using FCIP hiring authority in January 2006.  IRS' use of such authority steadily increased between January 2006 and January 2007 (when this suit was filed).  A significant number of Revenue Agents and Revenue Officers are now hired through the FCIP program.

2

Further, OPM has not offered any practical reason for its adamant refusal to produce the administrative record now. If the record were filed, the parties would be able to address both the merits and jurisdictional issues in a single set of briefs. This result would be consistent with the past practice in APA cases similar to this one, involving NTEU and OPM, would avoid redundant briefing, and would expedite the final resolution of this case.

    **1.**    The government acknowledges that to the extent that other parties raised concerns with OPM regarding the consistency of the FCIP program with statutorily mandated competitive procedures, the waiver doctrine it has cited in support of its Motion to Dismiss is inapplicable. <u>See</u> Memorandum in Support of Motion to Dismiss at 13, n. 6. Because the administrative record is the exclusive source of evidence concerning the extent to which OPM was made aware of these concerns during the four-year period leading up to the issuance of the final regulations, the Union cannot adequately address the waiver point without access to that record.

Contrary to the government's arguments (OPM Opp at 8), the Federal Register notice that accompanied the final regulations, which contains characterizations of the written comments OPM received during the 30 day notice

period between December 14, 2000 and January 16, 2001, is not an acceptable substitute for the administrative record itself.  First, the administrative record consists of more than just these comments, submitted during the brief 30 day notice period that OPM provided between the end of 2000 and the beginning of 2001, during the holiday season.  See OPM Opp. at 9, n.7.  As we explained in our opening memorandum (at 9, n. 5), in this circuit, the administrative record includes everything that was before the agency when it made its decision.  This would include the communications between OPM and agencies who were implementing the program in the four-year period between the issuance of the interim and the final regulations.

There is every reason to believe that the record will also include communications that occurred between OPM regulators and the Merit System Protection Board (MSPB) in connection with the MSPB's comprehensive report on the FCIP.  That report was released in September 2005, only a month after the final regulations were issued.  See "Building a High-Quality Workforce--the Federal Career Intern Program," at 6 (MSPB, Sept. 2005)(available at http://www.mspb.gov/studies/fcip_10_23_05/fcip102005.htm

(referring to communications occurring in February 2005 between MSPB and "OPM officials responsible for developing FCIP regulatory guidance").

The MSPB Report examined FCIP hiring under the interim regulations. It expressed concerns about the potential for abuse of the basic merit system principle of fair and open competition under the FCIP program. Report at 24. It also criticized OPM for failing to conduct adequate oversight or provide guidance to agencies about their implementation of the FCIP. Id. at 6. These concerns relate directly to the legal issues raised in this suit. If they were communicated to OPM by the MSPB, then OPM's waiver argument may well be inapplicable. See Natural Resources Defense Council v. EPA, 824 F.2d 1146, 1151 (D.C. Cir. 1987)(waiver/exhaustion argument does not apply when the agency "has had an opportunity to consider the identical issues [presented to the court] . . . but which were raised by other parties").

Moreover, the Federal Register notice did not, as OPM asserts "survey[] th[e] comments in great detail." OPM Opposition at 8. On the contrary, the Federal Register notice includes one-sentence summary characterizations of the written comments. See 70 Fed. Reg. 44219-44220 (Aug. 2, 2005). It is not even clear that the characterizations

5

of the comments that are provided in the Federal Register encompass the written comments of all of the eight agencies said to have filed them. Nor is it possible to discern the context in which the commenters raised the issues that are referenced in the notice. Further, the Federal Register contains no description of the unspecified number of oral comments and questions it received from agencies, at least some of which were apparently not favorable and which we assume were memorialized somewhere in writing by OPM. See 70 Fed. Reg. 44219 (observing that OPM had "received a number of oral comments and questions from agencies asking for information and clarification," noting that "the majority were favorable", but not describing those that were unfavorable).[3]

    2.    Further, the administrative record may contain information relevant to our argument that the Union cannot

---

[3] In arguing that the Federal Register provides the Union with sufficient basis for discerning the content of the comments OPM received, OPM cites the "presumption of regularity" and observes that "there is nothing to suggest that somehow the release's discussion of the comments cannot be trusted." OPM Opp. At 8. The Union is not accusing OPM of deception; the fact is that the characterization of the comments in the Federal Register was very summary and the discussion of those comments did not purport to be exhaustive. Our argument is not that OPM is not to be "trusted" but that the Union should be able to review the administrative record itself in order to respond to OPM's motion to dismiss.

have waived its right to file suit, nor can it be accused of unreasonable delay in doing so, because OPM's intent that the FCIP program would provide an unlimited exception to statutorily mandated competitive hiring procedures was carefully camouflaged.  See Plaintiff's Memorandum in Support of Motion for An Order Requiring Defendant to File the Administrative Record at 6-8.

OPM argues (Opp. at 8) that NTEU is "readily capable of explaining [its understanding of the interim proposed rule] without resort to the comments of other parties." The Union, of course, fully intends to elaborate on its basis for concluding that the interim regulations were designed to create a limited special focus program that would not affect its members in any significant respect. The contents of the administrative record are also relevant, however, because they will shed light upon the degree to which even the federal agencies that would be implementing the program understood the regulations to be establishing anything other than a limited special purpose hiring authority.  Therefore the Union should be afforded access to the record for use in responding to OPM's Motion to Dismiss.

In that regard, the Union is not arguing, as OPM suggests (OPM Opp. at 5-8), that the final rule differed

7

from the interim rule. Nor is it claiming that the final rule is not the "logical outgrowth" of the interim rule. Id. Our argument is based upon the rationale of the "logical outgrowth" cases, rather than the specific context in which that doctrine has been applied.[4] In particular, we argue that the waiver rule is not applicable here because NTEU lacked notice of the FCIP regulations' intended breadth. Absent such notice, it could not have been expected to raise its current concerns during the comment period.

    **3.** In addition to its meritless legal arguments, OPM's Opposition is littered with assertions that the reasons the Union has identified in support of its motion to compel production of the administrative record were a pretext for some hidden (and apparently nefarious) agenda. See OPM Opp. at 4 (observing that NTEU motion is nothing more than "a stratagem designed to enable NTEU to move immediately for summary judgment and thereby attempt to litigate the merits simultaneously with the pending motion

---

[4] The Union's passing citation of two cases involving the "logical outgrowth" rule was preceded by a "cf." signal. See Union Motion at 5-6. A "cf." signal means that "the cited authority supports a proposition different from the main proposition but sufficiently analogous to provide support." *The Bluebook, A Uniform System of Citation*, (Seventeenth Edition, 2000) at 23.

8

to dismiss"); see also id. at 1, 10. There is no basis whatsoever for OPM's charges.

To be sure, the Union did begin requesting access to the administrative record well before OPM filed its motion to dismiss. See OPM Opp. at 1 (ascribing significance to the "timing" of Union's motion).[5] It did so for purposes of enabling it to prepare its motion for summary judgment. But when OPM indicated to the Union that it would resist filing the administrative record because it intended to file a motion to dismiss, the Union refrained from taking any action to compel its production. It was only after the Union reviewed the government's Motion to Dismiss and started to prepare its opposition, that it became clear that the administrative record would likely contain information necessary to establish NTEU's defenses to that motion. That is what spurred the current motion.

In any event, OPM's contention--that a party's interest in briefing both the jurisdictional and merits issues at the same time is out of the ordinary, if not nefarious—-is puzzling. When the briefing of these issues is consolidated, the Court is not compelled to decide the

---

[5] Counsel for NTEU informally inquired into the availability of the administrative record in February 2007, by contacting an attorney in OPM's Office of General Counsel. It filed a formal request for documents on April 10.

9

merits issues before it decides the jurisdictional ones. Indeed, we agree that the Court is <u>required</u> to determine its subject matter jurisdiction <u>before</u> ruling on the merits. But the order in which the Court considers and addresses the parties' arguments has no bearing upon whether it would be useful for the parties to address all of the issues in the same set of briefs.

In fact, OPM is simply wrong when it asserts (at p. 3) that the "usual practice" in APA cases is to postpone briefing on the merits and the filing of the administrative record until after "threshold" issues, including subject matter jurisdiction, are addressed. In virtually every APA case that NTEU or another federal sector union has brought against OPM, the government has asserted similar "threshold" arguments, including lack of standing or ripeness, preclusion of the Court's subject matter jurisdiction based on the administrative remedies set forth in the Civil Service Reform Act, and/or failure to exhaust administrative remedies. In the Union's experience, the Justice Department, representing OPM, routinely responds to such complaints by filing a pleading entitled "motion to dismiss or in the alternative for summary judgment." As a result, jurisdictional and merits issues are briefed at the same time. <u>See</u> <u>e.g.</u> <u>NTEU v. Chertoff</u>, 385 F. Supp. 2d 1

(D.D.C. 2005); <u>AFGE v. HUD</u>, 924 F. Supp. 225 (D.D.C. 1996); <u>NTEU v. Newman</u>, 768 F. Supp. 8 (D.D.C. 1991); <u>National Federation of Federal Employees v. Devine</u>, 591 F. Supp. 166 (D.D.C. 1984); <u>NTEU v. Devine</u>, 577 F. Supp. 738 (D.D.C. 1983).

    This past practice is supported by sound justifications.  Among other things, the Union necessarily must set forth its legal arguments on the merits in some detail in responding to the government's Motion to Dismiss, in order that the Court may determine whether it has established the "injury in fact" and redressability necessary to establish standing.  If merits briefing does not occur at the same time as the Union's opposition to the Motion to Dismiss, the Union will have to re-brief the issue, and the Court will have to consider it a second time.  Further, should the Court reject the government's jurisdictional arguments, the case would be in a posture that permits the Court to promptly issue a decision on the merits.

    **5.**    Finally, it bears noting that despite the efforts it has expended resisting the Union's request that it file the administrative record, OPM does not assert or argue that doing so would prejudice it in any way.  On the other hand, the Union has shown that it would be prejudiced if it

were deprived of the opportunity to review and employ relevant portions of the administrative record in responding to OPM's motion to dismiss. The balance of interests, therefore, supports the Union's Motion, and counsels in favor of requiring OPM to file the administrative record forthwith.[6]

## CONCLUSION

On the basis of the foregoing, and for the reasons set forth in our opening memorandum, the Court should grant NTEU's motion and direct OPM to file the administrative record with the Court. In addition, the Court should grant NTEU an enlargement of time to respond to OPM's Motion to Dismiss for Lack of Subject Matter Jurisdiction, or in the

---

[6] OPM attempts to draw an analogy between its argument that the administrative record should not be produced until after the Court makes a decision on its motion to dismiss and the practice of staying discovery when a motion to dismiss is pending. See OPM Opp. at 3, n.1. But the discovery process is far more time-consuming, and subject to judicial involvement, than is the requirement that OPM file the administrative record, which one would assume it had already assembled either during the decisionmaking process or when NTEU filed this suit. Further, OPM does not deny that where the Court must go outside the pleadings to decide a motion to dismiss, as we argue is true here, it would be improper to deny a party discovery.

Alternative, for Failure to State a Claim, until 30 days after OPM has filed the administrative record.

                            Respectfully submitted,

                            /s/ Gregory O'Duden
                            GREGORY O'DUDEN
                            General Counsel
                            D.C. Bar No. 254862

                            /s/ Elaine Kaplan
                            ELAINE KAPLAN
                            Senior Deputy General Counsel
                            D.C. Bar No. 292441


                            /s/ Larry J. Adkins
                            LARRY J. ADKINS
                            Deputy General Counsel
                            D.C. Bar No. 425653

                            /s/ Timothy B. Hannapel
                            TIMOTHY B. HANNAPEL
                            Assistant Counsel
                            D.C. Bar No. 412245

                            NATIONAL TREASURY EMPLOYEES UNION
                            1750 H Street, NW
                            Washington, DC 20006
                            Telephone:  (202) 572-5500
                            Facsimile:  (202) 572-5645

Date: July 5, 2007      Attorneys for Plaintiff