**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
NAT'L TREASURY EMPLOYEES        )
UNION,                          )
                               )
      Plaintiff,                )
                               )
      v.                        )     Civil Action No. 07-168 (RWR)
                               )
KATHIE ANN WHIPPLE,             )
                               )
      Defendant,                )
_____)
```

<u>**MEMORANDUM OPINION AND ORDER**</u>

The National Treasury Employees Union ("NTEU") brings this action against the Director of the U.S. Office of Personnel Management ("OPM" or "Director")[1] under the Administrative Procedure Act ("APA"), alleging that OPM's promulgation of a regulation authorizing the Federal Career Intern Program ("FCIP") was arbitrary, capricious, and contrary to law.  The Director has moved to dismiss, claiming that NTEU lacks standing, the claim is precluded by the Civil Service Reform Act ("CSRA"), NTEU waived its claim by not raising it during rulemaking, and the claim is barred by the doctrine of laches.  NTEU opposes the motion to dismiss and has moved to require the Director to file the administrative record in order for NTEU to respond to the waiver argument.  Because NTEU has associational standing and the claim

---

[1] Kathie Ann Whipple, Acting Director, is substituted for Linda Springer under Fed. R. Civ. P. 25(d).

- 2 -

is not precluded by the CSRA or barred by laches, the Director's

motion to dismiss on these grounds will be denied.  Because the

administrative record will be needed to determine whether the

Director's waiver argument should prevail, the Director's motion

to dismiss as to the waiver issue will be denied without

prejudice and NTEU's motion to compel will be granted.[2]

BACKGROUND

NTEU represents the collective bargaining interests of

certain federal employees at the Internal Revenue Service

("IRS"), the Federal Deposit Insurance Corporation, and the

Department of Homeland Security's Bureau of Customs and Border

Protection.  (Compl. ¶ 3.)  For some federal government

positions, competitive examinations for applicants are required

for appointment to the competitive service.  See 5 U.S.C. § 3304.

However, § 3302 provides "as nearly as conditions of good

administration warrant, for . . . necessary exceptions of

positions from the competitive service."  5 U.S.C. § 3302.  (See

also Compl. ¶ 6.)  On December 14, 2000, OPM issued an interim

regulation implementing the FCIP.  (Compl. ¶ 11.)  A final

regulation, which adopted the interim regulation with a few minor

changes, was issued on August 2, 2005.  (Id. ¶ 12.)  See also 5

C.F.R. § 213.3202(o) (2006).  The regulation allowed agencies

---

[2] NTEU's motion requesting an oral argument on the pending
motions will be denied as moot.

- 3 -

"unfettered discretion to use FCIP authority to fill vacancies in virtually any position, even those for which it is practicable to hold a competitive examination." (Compl. ¶ 13 (emphasis omitted).) Agencies have incentives to hire interns under the FCIP because many of the procedural requirements for hiring into competitive service positions do not apply. (Id. ¶ 14.) For example, under the FCIP, agencies are no longer required to make public announcements of positions on the USAJOBS website,[3] follow rules governing rating and ranking applicants' qualifications, or provide extra points to applicants with veteran status. (Id.) After two years, the intern appointment may be converted to a career or career conditional status in the competitive service. (Id. ¶ 16.) NTEU alleges that three groups of workers represented by NTEU were injured by the FCIP's implementation: 1) current FCIP interns; 2) employees who apply for positions under the FCIP; and 3) employees at the IRS who seek promotions. (Id. ¶¶ 17, 21, 22.)

The Director moves under Federal Rule of Civil Procedure 12(b)(1) to dismiss for lack of jurisdiction, arguing that NTEU does not possess Article III standing, and the claims are precluded by the CSRA. The Director also moves under Rule

---

[3] The USAJOBS website, coordinated by OPM, provides current information to the public on federal government employment opportunities. See USAJOBS, The Federal Government's Official Jobs Site, http://www.usajobs.gov (last visited July 13, 2009).

- 4 -

12(b)(6) to dismiss for failure to state a claim, arguing that
NTEU waived its challenge by failing to submit a comment during
the rulemaking process, and that laches bars relief.  NTEU
opposes dismissal, but has moved to compel the Director to file
the administrative record before NTEU must respond to the waiver
argument.  The Director opposes NTEU's motion to compel,
asserting that NTEU does not need the administrative record to
respond and the Federal Register's descriptions are adequate.

DISCUSSION

I.   JURISDICTION

     "On a motion to dismiss for lack of subject-matter
jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the
burden of establishing that the court has subject-matter
jurisdiction."  Larsen v. U.S. Navy, 486 F. Supp. 2d 11, 18
(D.D.C. 2007).  "Because subject-matter jurisdiction focuses on
the court's power to hear the claim, however, the court must give
the plaintiff's factual allegations closer scrutiny when
resolving a Rule 12(b)(1) motion."  Jin v. Ministry of State
Sec., 475 F. Supp. 2d 54, 60 (D.D.C. 2007).  The court may look
beyond the complaint, but "'must accept as true the allegations
in the complaint and consider the factual allegations of the
complaint in the light most favorable to the non-moving party.'"
Short v. Chertoff, 526 F. Supp. 2d 37, 41 (D.D.C. 2007) (quoting
Erby v. United States, 424 F. Supp. 2d 180, 181 (D.D.C. 2006).

- 5 -

See also Nat'l Ass'n of Home Builders v. U.S. Army Corps of
Eng'rs, 539 F. Supp. 2d 331, 337 (D.D.C. 2008) (stating that "the
court is not limited to the allegations contained in the
complaint" and can consider other undisputed facts on the
record).

A.   Civil Service Reform Act

The CSRA is a comprehensive scheme which provides
protections to most federal civil servants and exclusive remedies
to such employees aggrieved by adverse personnel actions.  United
States v. Fausto, 484 U.S. 439, 443 (1988).  The Director relies
on Fornaro v. James, 416 F.3d 63 (D.C. Cir. 2005) to assert that
the CSRA preempts the NTEU's APA claims filed in this court.
(Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 41.)
In Fornaro, plaintiffs dissatisfied with their retirement benefit
amounts, brought an APA challenge in district court to how OPM
calculated civil service benefits, framing their claims as a
system-wide challenge rather than a challenge to individual
determinations.  Fornaro, 416 F.3d at 64, 67.  Fornaro found that
the action was foreclosed by the CSRA because the plaintiffs
sought a remedy that was closely connected to the relief
available only in the administrative process.  Id. at 68-69.
Since the Fornaro plaintiffs' system-wide challenge would
necessarily decide the merits of the plaintiffs' individual
benefit claims, the court decided that allowing the challenge

would impermissibly create a right to file an action in court where review of benefit determinations was committed solely to the CSRA's administrative process.

While the CSRA may foreclose APA challenges "even where the complaint [does] not concern 'a *type* of personnel action [explicitly] covered by the CSRA[,]'" the CSRA is "a system for review and resolution of federal employment disputes[.]" Filebark v. U.S. Dep't of Transp., 555 F.3d 1009, 1010, 1013 (D.C. Cir. 2009) (quoting Graham v. Ashcroft, 358 F.3d 931, 934 (D.C. Cir. 2004)).  Unlike what plaintiffs claimed in Fornaro, NTEU does not challenge any personnel decisions or benefits determinations made in individual cases, and instead asserts that the OPM's promulgation of the FCIP regulation was arbitrary and an abuse of discretion in violation of 5 U.S.C. § 3302 and § 3304 "because [the regulation was] not based on any showing by OPM that [it was] 'necessary' or 'warranted by the conditions of good administration.'"  (Compl. ¶ 32.)  NTEU's requested relief would prohibit further use of the FCIP regulation, but does not seek individual relief for specific employee claims.

The CSRA does not preclude this type of rulemaking challenge under the APA.  In NTEU v. Devine (Devine I), 577 F. Supp. 738 (D.D.C. 1983), the plaintiff argued that implementation of reduction in force regulations was barred by federal law and should not be implemented.  The district court noted that unlike

- 7 -

a labor dispute between an employee and an employer, "a traditional rule-making challenge brought under the APA by a party aggrieved by agency action, 5 U.S.C. § 702, alleging that OPM's rules are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' under 5 U.S.C. § 706(2)(A)" was a claim over which the court had jurisdiction. Devine I, 577 F. Supp. at 745. On appeal, the court of appeals rejected the defendant's argument that the case could not be brought under the APA because while the CSRA may provide a detailed scheme of administrative protection for certain defined employment rights, it does not necessarily preclude pre-enforcement judicial review of a regulation under the APA. NTEU v. Devine (Devine II), 733 F.2d 114, 117 n.8 (D.C. Cir. 1984). "The APA has often been found to provide jurisdiction for a federal court to hear union challenges to agency regulations or policies of general application on the grounds that they were inconsistent with a statute or the Constitution." NTEU v. Chertoff, 385 F. Supp. 2d 1, 23 (D.D.C. 2005), partially reversed on other grounds, 452 F.3d 839 (D.C. Cir. 2006) (citing NTEU v. Horner, 854 F.2d 490 (D.C. Cir. 1988) (reviewing under the APA whether an OPM rule exempting positions from competitive service was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law")). In NTEU v. Cornelius, 617 F. Supp. 365 (D.D.C. 1985), the court noted that even though

aggrieved federal employees are required to bring cases involving individual rights in accordance with the CSRA, the CSRA does not "insulate OPM from direct judicial review of challenges to *rulemaking* under the APA" and the court had jurisdiction over an APA challenge to the promulgation of a final rule governing appeal procedures of certain adverse employment actions.  617 F. Supp. at 367 (emphasis in original).  Likewise, in OCONUS DOD Employee Rotation Action Group v. Cohen, 144 F. Supp. 2d 1, 7 (D.D.C. 2000), the court relied on Devine II to determine that the plaintiffs' claim that a policy violated CSRA principles and federal statutes, was arbitrary and capricious, and lacked a rational policy basis, was justiciable under the APA and not precluded by the CSRA.

The Director asserts that Devine II contradicts the Supreme Court's decision in Fausto.  In Fausto, the plaintiff brought a suit for backpay in the U.S. Claims Court arguing that his suspension violated agency regulations.  484 U.S. at 443.  Fausto concluded that the "CSRA established a comprehensive system for reviewing personnel action taken against federal employees" and that the CSRA's deliberate exclusion of an excepted service employee from the provisions that establish administrative or judicial review barred the plaintiff from seeking review in the Claims Court.  Id. at 455.  Fausto noted the importance of channeling to the MSPB an individual's challenge to a personnel

action and that the CSRA gave access to administrative and judicial remedies for only certain employees.  However, <u>Fausto</u> did not involve judicial review of an agency regulation, which is at issue here.  While the CSRA bars challenges that seek review of individual personnel decisions, <u>Fausto</u> does not expressly preclude NTEU from challenging the validity of OPM's promulgation of the FCIP regulation.

The Director argues that because NTEU is alleging a violation of the merit systems principles, that it is not bringing an APA challenge.  However, the complaint alleges that OPM's decision to promulgate the FCIP regulation was "arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law within the meaning of the Administrative Procedure Act" because OPM failed to show a proper basis as is required by 5 U.S.C. § 3302.  (Compl. ¶ 32.)  Section 3302 provides authority to exempt when necessary certain positions from the competitive service process that is required under 5 U.S.C. § 3304.  5 U.S.C. §§ 3302, 3304.  NTEU's claim is that OPM failed to make any showing that the FCIP was "necessary" or "warranted by conditions of good administration" before issuing a final regulation.  (Compl. ¶ 32.)

The Director also argues that because NTEU asserts that the FCIP violates "statutory merit systems principles[,]" NTEU should seek review with the Office of Special Counsel under 5 U.S.C.

§ 1214.  (Def.'s Mem. at 39, 40 n.19.)  Under the CSRA, the

Office of Special Counsel addresses employee complaints regarding

prohibited personnel actions, and judicial review under the APA

is precluded.[4]  5 U.S.C. § 1214; <u>see also</u> <u>Carson v. U.S. Office</u>

<u>of Special Counsel</u>, 563 F. Supp. 2d 286, 289 (D.D.C. 2008)

(noting that § 1214 directs employees to file a complaint with

the Office of Special Counsel if they have been subject to

prohibited personnel practices).  However, although the complaint

involves the FCIP and appointment procedures, the complaint does

not seek to address adverse personnel actions regarding specific

employees.  Instead, the complaint brings an APA claim

challenging the validity of the regulation that created the FCIP,

---

[4] Personnel actions means:

(i) an appointment; (ii) a promotion; (iii) an action
under chapter 75 of this title or other disciplinary or
corrective action; (iv) a detail, transfer, or
reassignment; (v) a reinstatement; (vi) a restoration;
(vii) a reemployment; (viii) a performance evaluation
under chapter 43 of this title; (ix) a decision
concerning pay, benefits, or awards, or concerning
education or training if the education or training may
reasonably be expected to lead to an appointment,
promotion, performance evaluation, or other action
described in this subparagraph; (x) a decision to order
psychiatric testing or examination; and (xi) any other
significant change in duties, responsibilities, or
working conditions; with respect to an employee in, or
applicant for, a covered position in an agency, and in
the case of an alleged prohibited personnel practice
described in subsection (b)(8), an employee or
applicant for employment in a Government corporation as
defined in section 9101 of title 31[.]

5 U.S.C. § 2302.

a type of claim which has been distinguished from one that is precluded by the CSRA.  See NTEU v. Egger, 783 F.2d 1114, 1117 (D.C. Cir. 1986) (describing the challenge to reclassifying positions to a different pay category as one "merely . . . to the application of an existing rule and thus within the CSRA scheme of review[,]" and contrasting it with Devine II, which "involve[d] the validity of a general rule or a rulemaking subject to judicial review").[5]  NTEU's claim is not foreclosed by the CSRA and § 1214.

B.  Associational standing

An organization may sue on behalf of its members if it demonstrates "that at least one member would have standing under

---

[5] The Director also relies on NTEU v. U.S. Merit Systems Protection Board, 743 F.2d 895, 907 (D.C. Cir. 1984), to support the proposition that NTEU must bring its claim to the MSPB under 5 U.S.C. § 1204(f).  (Reply Mem. in Support of Mot. to Dismiss ("Def.'s Reply") at 23 (noting that § 1204(f) was previously codified at § 1205(e).)  Section 1204 allows review of a rule or regulation issued by OPM "on the granting by the Board, in its sole discretion, of any petition for such review filed with the Board by any interested person, after consideration of the petition by the Board[.]"  5 U.S.C. § 1204(f).  U.S. Merit Systems Protection Board involved a different issue -- whether the court had jurisdiction to review an MSPB decision -- in a prior statutory scheme and did not address whether a rulemaking challenge under the APA must be brought before the MSPB.  U.S. Merit Systems Protection Board concluded that despite some potential for duplication of judicial efforts, the court of appeals had jurisdiction to review all final MSPB orders while "[o]ther challenges to a particular rule or regulation, including whether its issuance observed legally required procedures or was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' would still have to be brought in the district courts."  743 F.2d at 907.

- 12 -

Article III to sue in his or her own right, that the interests it seeks to protect are germane to its purposes, and that neither the claim asserted nor the relief requested requires that an individual member participate in the lawsuit."[6] <u>Natural Res. Def. Council v. E.P.A.</u>, 489 F.3d 1364, 1370 (D.C. Cir. 2007) (citing <u>Hunt v. Washington State Apple Adver. Comm'n</u>, 432 U.S. 333, 342-43 (1977); <u>Sierra Club v. E.P.A.</u>, 292 F.3d 895, 898 (D.C. Cir. 2002)).

### 1.   Member standing

In order to establish standing, NTEU must allege "a personal injury-in-fact[,] that is . . . fairly traceable to the defendant's conduct[,] and [is] redressable by the relief requested." <u>Int'l Bhd. of Teamsters v. Transp. Sec. Admin.</u>, 429 F.3d 1130, 1134 (D.C. Cir. 2005) (internal quotation marks omitted). Specifically, Article III standing "requires (1) injury in fact which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical[,] . . . (2) a causal connection between the injury and the conduct complained of[,]" <u>Wright v. Foreign Serv. Grievance Bd.</u>, 503 F. Supp. 2d 163, 171 (D.D.C. 2007) (quoting <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)) (internal quotation marks omitted), and (3) a likelihood, as opposed to merely speculation, "that the

---

[6]   The Director does not contest that the interests NTEU seeks to protect are germane to its purposes.

- 13 -

injury will be redressed by a favorable decision." <u>Lujan</u>, 504 U.S. at 561 (internal quotation marks omitted).

NTEU alleges that interns are injured because they are unable to compete for a competitive position and are required to be on probation for at least two years.  The Director first argues that the NTEU-represented interns do not allege a "net" injury because the two-year probation period gives interns more time to evaluate whether their positions are a good fit for them and to prove their worth to their employers.  (Def.'s Mem. at 20.)  Drawing all inferences at the pleading stage in favor of NTEU, while the employees may have received some benefit from being exempted hires, they were also prevented from applying for the same position with allegedly superior benefits.  <u>See</u> <u>NTEU v. Seidman</u>, 786 F. Supp. 1041, 1044 (D.D.C. 1992) (stating that although the plaintiffs may have received some benefits, the "denial of an opportunity to apply for a position in the competitive service with its superior job status" could constitute an injury).  NTEU has sufficiently pled an injury in fact.

The Director also argues that because the one-year delay in the right to appeal a termination to the MSPB applies only to interns in their second year, NTEU has not identified any member who has been or will be harmed.  In its opposition, NTEU provided affidavits discussing one member in detail who was hired under

- 14 -

the FCIP regulation and was terminated during his second year
(Pl.'s Opp'n, Ex. 6 at 2-3), and noting that several additional
employees worked in FCIP positions for more than twelve months,
but were terminated prior to twenty-four months of service.
(Id., Ex. 5 at 3.)  These allegations are sufficient to establish
an injury by at least one NTEU member.

     The Director also asserts that the claim is not traceable to
OPM conduct because "but for the FCIP, the employees would have
accrued MSPB appeal rights on the quicker schedule afforded to
new competitive service hires – which, in turn, has to be
predicated on an assumption that they would have been hired into
the competitive service, not merely that they would have had a
'chance to apply' for such positions."  (Def.'s Reply at 8 n.10.)
Traceability examines whether there is a "'causal connection
between the claimed injury and the challenged conduct[,]'" that
is, whether the "'asserted injury was the consequence of the
defendant's actions.'"  Winpisinger v. Watson, 628 F.2d 133, 139
(D.C. Cir. 1980) (quoting Duke Power Co. v. Carolina Envtl. Study
Group, Inc., 438 U.S. 59, 72 (1978); Warth v. Seldin, 422 U.S.
490, 505 (1975)); see also N.C. Fisheries Ass'n, Inc. v.
Gutierrez, 518 F. Supp. 2d 62, 81 (D.D.C. 2007) (stating that the
inquiry is whether the "challenged action of the defendant [is]
what caused the injury alleged").  Causation does not require
that the "challenged action must be the 'sole' or 'proximate'

- 15 -

cause of the harm suffered, or even that the action must

constitute a 'but-for cause' of the injury. . . .  At its core,

the causation inquiry asks whether 'the agency's actions

materially increase[d] the probability of injury.'"  <u>N.C.</u>

<u>Fisheries Ass'n, Inc.</u>, 518 F. Supp. 2d at 83 (brackets in

original) (quoting <u>Huddy v. F.C.C.</u>, 236 F.3d 720, 722 (D.C. Cir.

2001)).  However, there is no standing "where the court 'would

have to accept a number of very speculative inferences and

assumptions in any endeavor to connect the alleged injury with

[the challenged conduct].'"  <u>Autozone Dev. Corp. v. District of</u>

<u>Columbia</u>, 484 F. Supp. 2d 24, 29 (D.D.C. 2007) (brackets in

original) (quoting <u>Winpisinger</u>, 628 F.2d at 139).  NTEU alleges

that OPM's promulgation of the FCIP regulation caused injuries to

interns who must wait longer before having the right to appeal

personnel actions to the MSPB and who could not compete for

competitive service positions.  The facts alleged support a

causal link between the injury and the challenged conduct that is

not speculative and is fairly traceable to the Director's

actions.

The Director also alleges that NTEU has not shown

redressability.  She reasons that invalidating the FCIP would

cause the current interns to lose their positions, and that the

court cannot simply order that current intern positions be

changed to competitive service positions because it is uncertain

whether the interns would be hired into competitive service positions absent the FCIP.  In NTEU v. Horner, 854 F.2d 490 (D.C. Cir. 1988), the court noted that "[a]lthough OPM has authority, under certain limited circumstances, to make appointments to the competitive service without using a competitive examination[,] . . . a court-ordered return to the competitive service, without competitive examinations, would clearly be inappropriate[.]"  854 F.2d at 499 (stating that "[i]t would therefore be anomalous for us to order that these positions be restored to the competitive service when no acceptable competitive examination is available").  Unlike in Horner, though, competitive examinations exist for the positions at issue here and the FCIP regulation already allows for interns to be converted to competitive service at the end of their internship.  Moreover, one court has rejected the notion that if a court were to order a competitive examination, current excepted employees would have to lose their jobs because this argument "fails to take into account the equitable powers of the Court which could allow it to craft an order that would not adversely affect those employees who, through no fault of their own, might be deemed to have been improperly hired into the excepted service."  Seidman, 786 F. Supp. at 1045; see also Allen v. Heckler, 780 F.2d 64, 70 (D.C. Cir. 1985) (stating that the district court should fashion a remedy that would allow exempted employees to obtain the benefits

- 17 -

of competitive positions while taking into consideration the need for flexible job tenure guidelines).

Thus, NTEU has established that at least one of its members has standing.

2.   Individual member participation

The Director argues that adjudication of this case requires individual member participation in part because there are conflicts between NTEU's positions in representing different members.  However, conflicts of interest among members do not necessarily deprive the organization of associational standing even if the remedies sought may harm some members.[7]  La. Envtl. Action Network v. E.P.A., 172 F.3d 65, 68-69 (D.C. Cir. 1999); Nat'l Lime Ass'n v. E.P.A., 233 F.3d 625, 637 (D.C. Cir. 2000) (stating that the plaintiff is "entitled to be an advocate for a subgroup of cement manufacturers whose interests diverge from those of the run of cement producers[]"); Nat'l Mar. Union of Am. v. Commander, Military Sealift Command, 824 F.2d 1228, 1233-34 (D.C. Cir. 1987) (noting that courts generally defer to an

_____

[7] The Director relies on Kickapoo Tribe of Oklahoma v. Lujan, 728 F. Supp. 791 (D.D.C. 1990), for support.  However, in Kickapoo, the court found that there was concrete evidence of a conflict between the Kickapoo Tribe and members of the Texas Band, whose interests Kickapoo sought to represent.  Id. at 796 (noting that a "vast majority" of the Texas Band members voted to ratify the new constitution which would separate the Texas Band from the Kickapoo Tribe).  The Director speculates as to the conflicts between NTEU members, but presents no evidence that members actually object to NTEU's representation.

- 18 -

association's resolution of any internal conflicts among members unless there is a showing that the organization's own procedures have been violated, and deciding that "the mere fact of conflicting interests among members of an association does not of itself defeat the association's standing to urge the interests of some members in litigation, even though success may harm the legal interests of other members").

Otherwise, the Director's argument that individual members must participate does not suggest how the claim asserted or the requested relief require such involvement.  NTEU's claim asserts that because OPM failed to show that the FCIP was necessary or warranted by conditions of good administration, OPM's promulgation of the regulation was arbitrary and has injured NTEU members.  This type of claim does not involve individualized inquiries.  See Hotel & Rest. Employees Union, Local 25 v. Smith, 846 F.2d 1499, 1503 (D.C. Cir. 1988) (stating that "[s]ince the union does not challenge the disposition of any particular asylum request, judicial redress of the defective INS practices requires jurisdiction over no particular . . . alien"); Ass'n of Cmty. Orgs. for Reform Now v. FEMA, 463 F. Supp. 2d 26, 32 (D.D.C. 2006) (noting that the requested declaratory and injunctive relief were not the types of remedies that require member participation because "'individual participation is not normally necessary when an association seeks prospective or injunctive

- 19 -

relief for its members' . . . [and] this suit raise[d] questions regarding the constitutionality of FEMA's notice procedures, not 'the eligibility of individual . . . claimants'" (quoting United Food & Commercial Workers v. Brown Group, 517 U.S. 544, 546 (1996); Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock, 477 U.S. 274, 287 (1986))).  Cf. Harris v. McRae, 448 U.S. 297, 321 (1980) (stating that "[s]ince 'it is necessary in a free exercise case for one to show the coercive effect of the enactment as it operates against him in the practice of his religion,' . . . the claim asserted here is one that ordinarily requires individual participation" (quoting Abington Sch. Dist. v. Schempp, 374 U.S. 203, 223 (1963)); NTEU v. U.S. Dep't of Treasury, Civil Action No. 92-1150 (HHG), 1993 WL 835593, at *5 (D.D.C. Feb. 12, 1993) (noting that the constitutionality of the government's attempt to question employees on various aspects of their personal lives would depend on the specific question and the employee's position and thus individual member participation was required).

Moreover, NTEU seeks declaratory and injunctive relief, which does not require individual participation.  Nat'l Coal. Against Misuse of Pesticides v. Espy, Civil Action No. 92-975 (SSH), 1993 WL 102650, at *1 n.2 (D.D.C. Mar. 16, 1993) (stating that because plaintiffs seek equitable relief, individual participation is not required); Seidman, 786 F. Supp. at 1045

- 20 -

(finding that in an APA challenge to an OPM regulation, because the "plaintiffs limit their requests to injunctive and declaratory relief, . . . no individual participation is required as would be the case if the Court needed to measure specific individual damages").  Cf. Am. Fed'n of Gov't Employees v. Hawley, 543 F. Supp. 2d 44, 50 (D.D.C. 2008) (stating that in a Privacy Act case, the sole remedy is actual damages and individual member participation is required to prove their individual damages); Office & Prof'l Employees Int'l Union Local 2, AFL-CIO v. F.D.I.C., 138 F.R.D. 325, 326 (D.D.C. 1991) (noting that "'claims for monetary relief necessarily involve individualized proof and thus the individual participation of association members'") (quoting United Union Roofers v. Ins. Corp. of Am., 919 F.2d 1398, 1400 (9th Cir. 1990)).  Individual member participation, then, is not required here.

II.  ADEQUACY OF PLED CLAIM

In a motion to dismiss for failure to state a claim under Rule 12(b)(6), the complaint must be construed in the light most favorable to the plaintiff and "the court must assume the truth of all well-pleaded allegations."  Warren v. District of Columbia, 353 F.3d 36, 39 (D.C. Cir. 2004).  "However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual

allegations." <u>Kowal v. MCI Commc'ns Corp.</u>, 16 F.3d 1271, 1276
(D.C. Cir. 1994).  A plaintiff does not need to plead detailed
factual allegations, <u>Aktieselskabet AF 21. Nov. 2001 v. Fame
Jeans Inc.</u>, 525 F.3d 8, 17 (D.C. Cir. 2008), but enough facts
must be pled to "state a claim to relief that is plausible on its
face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)
(noting that the facts alleged in the complaint must "raise a
right to relief above the speculative level" and that "more than
labels and conclusions" must be provided).  At the pleading stage
there is no probability requirement, but "something beyond . . .
mere possibility . . . must be alleged." <u>Id.</u> at 557-58.

A.   <u>Laches</u>

The Director argues that NTEU's claims are barred by the
doctrine of laches.  In order for laches to bar a claim, a
defendant "must show that the plaintiff has unreasonably delayed
in asserting a claim and that there was 'undue prejudice' to the
defendant as a result of the delay." <u>Jeanblanc v. Oliver Carr
Co.</u>, No. 94-7118, 1995 WL 418667, at *4 (D.C. Cir. June 21,
1995); <u>see also</u> <u>Pro-Football, Inc. v. Harjo</u>, 415 F.3d 44, 47
(D.C. Cir. 2005) (stating that assertion of laches as a defense
"requires proof of (1) lack of diligence by the party against
whom the defense is asserted, and (2) prejudice to the party
asserting the defense" (internal quotation marks omitted)); <u>Major
v. Plumbers Local Union No. 5 of United Ass'n of Journeymen &</u>

- 22 -

Apprentices of the Plumbing & Pipefitting Indus. of the U.S. &
Canada, 370 F. Supp. 2d 118, 128 (D.D.C. 2005) (stating that the
circumstances of any delay or prejudice is a factual inquiry).
"If only a short period of time elapses between accrual of the
claim and suit, the magnitude of prejudice required before suit
would be barred is great; if the delay is lengthy, a lesser
showing of prejudice is required."  Gull Airborne Instruments,
Inc. v. Weinberger, 694 F.2d 838, 843 (D.C. Cir. 1982).  The
Director claims that the "pertinent facts establishing the laches
defense plainly appear on the face of the complaint."  (Def.'s
Reply at 5.)  Because the complaint alleges the FCIP was created
in 2000 and NTEU did not file suit until January of 2007, the
Director argues that this constitutes an unreasonable delay and
prejudice.  NTEU argues that it was unaware of the FCIP's
application to its members and that the interim regulation,
created in 2000, did not become final until August 2005.

    For NTEU's claim under the APA, "[t]he right of action first
accrues on the date of the final agency action."  Harris v.
F.A.A., 353 F.3d 1006, 1010 (D.C. Cir. 2004); see also West
Virginia Highlands Conservancy v. Johnson, 540 F. Supp. 2d 125,
138 (noting that a six-year statute of limitations, 28 U.S.C.
§ 2401(a), applies to APA claims brought under 5 U.S.C. § 706).
In order to be considered final, "the action must mark the
'consummation' of the agency's decisionmaking process . . ..

[I]t must not be of a merely tentative or interlocutory nature[,] [a]nd . . . the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow[.]'" Harris, 353 F.3d at 1010 (quoting Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948); Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970)). "While it is true that publication in the C.F.R., the fact that the agency continues to take comments on the policy, and the agency's own characterization of the policy are all important factors for the court to consider in determining whether an agency has consummated the rule-making process and taken steps that alter or fix legal rights and obligations, none of these factors is dispositive." Am. Farm Bureau v. U.S. E.P.A., 121 F. Supp. 2d 84, 105 (D.D.C. 2000). NTEU may have been able to challenge the interim regulation, but the Director does not seek to dismiss NTEU's claim based on the statute of limitations, and NTEU's challenge to the final regulation implementing the FCIP was filed within six years of the final rule's promulgation. It is not necessarily unreasonable for NTEU to challenge the final regulation even though the interim regulation existed. In Beverly Enter., Inc. v. Herman, 50 F. Supp. 2d 7, 17 (D.D.C. 1999), the court concluded that the plaintiff's pre-enforcement challenge to the final rule was timely under the statute of

- 24 -

limitations even though the challenge to the interim rule was untimely, because while the plaintiff may have had some idea of what the final rule would encompass based on the interim rule, the agency could have changed the final rule based on comments received.

"[L]aches is not like [a statute of limitations], a mere matter of time; but principally a question of the inequity of permitting the claims to be enforced." Jeanblanc v. Oliver Carr Co., Civil Action No. 91-0128 (JHG), 1991 WL 241848, at *3 (D.D.C. Nov. 1, 1991) (internal quotation marks omitted). NTEU alleged that the FCIP originally "[gave] the appearance of being a limited, special focus hiring program" which was "purportedly intended to . . . target recruitment of 'exceptional men and women' for the Federal workforce[,]" but over time, became "the hiring method of choice for many federal jobs, . . . threaten[ing] to supplant the competitive examination process as the primary means of entry into the competitive service." (Compl. at 2.) NTEU's characterization of the facts, if assumed to be true at this early stage in the litigation, do not support a conclusion that NTEU unreasonably delayed in pursuing its claims against OPM over the final FCIP regulation. See In re Bell v. Rotwein, 535 F. Supp. 2d 137, 141-42 (D.D.C. 2008) (noting that at the motion to dismiss stage, the court assumed that the plaintiff's characterization of the agreement was true

- 25 -

and concluded that the plaintiff did not unreasonably delay in bringing suit because the cause of action had not yet accrued).

Regarding the second prong of the laches test, the Director asserts that this action will cause undue prejudice because federal agencies have structured their recruiting strategies based on the FCIP.  While NTEU offers little rebuttal to the Director's claims of prejudice, the Director does not offer specific evidence to support its claim of undue prejudice.  See generally Major, 370 F. Supp. 2d at 128 (stating that determination of prejudice is a factual inquiry and that it would be premature to resolve the application of laches when the inquiry requires facts not in the pleadings).  Even if there were undue prejudice, laches does not bar NTEU's claims since OPM has made no showing of at least some unreasonable delay that caused the undue prejudice.  See Rozen v. District of Columbia, 702 F.2d 1202, 1203 (D.C. Cir. 1983) (stating that laches "requires a finding both that the plaintiff delayed inexcusably or unreasonably in filing suit and that the delay was prejudicial to the defendant" (emphasis added)).

B.   Waiver

NTEU moves to compel production of the administrative record in order to respond to the Director's argument that NTEU waived its claim by failing to raise its issues during the rulemaking process.  The Director opposes this motion arguing that the

- 26 -

Federal Register provides adequate information regarding the comments received.  While a claim can be deemed waived if a plaintiff failed to raise the issue during the rulemaking process, Appalachian Power Co. v. E.P.A., 251 F.3d 1026, 1036 (D.C. Cir. 2001), a claim can still be considered where a non-party raised the issue at the administrative level and the agency considered the issue.  Natural Res. Def. Council, Inc. v. E.P.A., 824 F.2d 1146, 1151 (D.C. Cir. 1987); see also Nat'l Wildlife Fed. v. E.P.A., 286 F.3d 554, 562 (D.C. Cir. 2002) (stating that issues not raised in the comments before an agency are waived and will not be considered by the court).

The Federal Register entry for the final regulation implementing the FCIP stated that "[t]he interim rule is adopted as a final rule with the following changes based on agency comments.  OPM received written comments from eight agencies.  We also received a number of oral comments and questions from agencies asking for additional information and/or clarification. The majority of the comments were favorable."[8]  70 Fed. Reg. 44,219-01.  The Federal Register summarizes the comments received, but it does not provide sufficient detail to determine whether the issue surrounding NTEU's claim was raised at the

---

[8] Public records, such as the Federal Register, can be considered in a motion to dismiss under Rule 12(b)(6) without converting the motion to a motion for summary judgment.  Marshall County Health Care Auth. v. Shalala, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

administrative level.  <u>See generally</u> <u>Am. Bioscience, Inc. v.</u>
<u>Thompson</u>, 243 F.3d 579, 582 (D.C. Cir. 2001) (cautioning that the
court should not rely on the parties' representations to
determine the basis on which the agency acted when considering a
motion for preliminary injunction); <u>Ctr. for Auto Safety v. Fed.</u>
<u>Highway Admin.</u>, 956 F.2d 309, 314 (D.C. Cir. 1992) (noting that a
court evaluating an agency action should review "'the whole
record [before the agency at the time of the decision] or those
parts of it cited by a party'" (quoting 5 U.S.C. § 706)).
Production of all portions of the administrative record that will
reveal whether the claims NTEU raises here were raised at the
administrative level will be ordered.  Because the Federal
Register entry is not sufficient to establish that NTEU waived
its challenge, the Director's motion to dismiss on the grounds of
waiver will be denied without prejudice to its refiling after the
administrative record has been filed.[9]

CONCLUSION AND ORDER

Because NTEU has demonstrated associational standing, the
CSRA does not preclude NTEU's challenge, and the Director has not
shown an unreasonable delay in NTEU filing this action, the
Director's motion to dismiss will be denied as to these grounds.
The Director's motion to dismiss on the ground that NTEU waived

---

[9] Should the Director prefer, she may file a notice waiving
the waiver issue to moot it, and move for relief from the
requirement to produce the administrative record.

- 28 -

its claim will be denied without prejudice to its refiling after the administrative record has been filed.  Because there is a need for the administrative record, NTEU's motion to compel will be granted.  Accordingly, it is hereby

ORDERED that defendant's motion [4] to dismiss be, and hereby is, DENIED as to the standing, CSRA preemption, and laches grounds and DENIED without prejudice as to the waiver issue.  It is further

ORDERED that plaintiff's motion [6] to compel production of the administrative record be, and hereby is, GRANTED.  Defendant shall produce all portions of the administrative record that reveal what challenges were lodged and whether those raised here by NTEU were raised by anyone at the administrative level.  It is further

ORDERED that plaintiff's motion [13] requesting oral argument be, and hereby is, DENIED as moot.  It is further

ORDERED that the parties confer and submit by August 3, 2009 a joint status report proposing a deadline for filing the administrative record and a schedule on which to proceed on the waiver issue.  A proposed order shall accompany the joint report.

SIGNED this 20th day of July, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge